B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| BRE DANVERS-KIDMAN | KIMBERLY PHINNEY |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| N/A | N/A |

**PARTY** (Check One Box Only)
- ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
- ☒ Creditor  ☐ Other
- ☐ Trustee

**PARTY** (Check One Box Only)
- ☒ Debtor  ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor  ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

11 USC § 523(a)(2)   11 USC § 523 (c)(1)   11 USC § 727(a)(4)(A)

11 USC § 523(a)(6)   11 USC § 727(a)(2)(A)   F.R.B.P. 7001(1)

F.R.B.P. 7001(6)

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- 4 ☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- 5 ☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- 1 ☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- 2 ☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- 3 ☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 11,500 |

Other Relief Sought

WRIT OF ATTACHMENT

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR KIMBERLY PHINNEY | BANKRUPTCY CASE NO. 24 - 10066 | |
| DISTRICT IN WHICH CASE IS PENDING DISTRICT OF MAINE | DIVISION OFFICE BANGOR | NAME OF JUDGE JUDGE MICHAEL A. PAGONE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE ~~JUDGE MICHAEL A. PAGONE~~ |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE July 10, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) BRE DANVERS-KIDMAN (PRO SE) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KIMBERLY PHINNEY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | Case No. 24-10066 |
| ―――――――――――――――――― | ) | |
| | ) | |
| BRE DANVERS-KIDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 24-_____ |
| v. | ) | |
| | ) | |
| KIMBERLY PHINNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY

## AND RECOVER MONEY

NOW COMES Plaintiff, Bre Danvers-Kidman ("Plaintiff"), pro se, and respectfully requests that this Court determine that the sums set forth below, which are due to Plaintiff from the above-captioned debtor, Kimberly Phinney ("Debtor"), are nondischargeable and that Debtor is ineligible for a discharge, pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(6), and 523(c)(1), § 727(a)(2)(A) and (a)(4)(A), and Federal Rules of Bankruptcy Procedure 4007, 7001(1), 7001(6), 7003, and 7008(a), and D. Me. LBR 7003-1, and as grounds therefore, Plaintiff states as follows:

### Jurisdiction and Venue

1. This Adversary Proceeding is brought pursuant to the statutes and Rules set forth above and in connection with Debtor's Chapter 7 case under Title 11 of the United States Bankruptcy Code (the "Code"), Case No. 24-10066, now pending before the United States Bankruptcy Court for

the District of Maine.

2. This Court has jurisdiction over this Adversary Proceeding pursuant to 11 U.S.C. §§ 523 and 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

4. Venue is proper in the District of Maine pursuant to 28 U.S.C. §§ 1408 and 1409.

## Parties

5. Bre Danvers-Kidman is an individual who paid Debtor for services which were neither rendered nor refunded, and resides at 26 Lawn Ave, Saco, ME, 04072.

6. Upon information and belief, Debtor is an individual formerly doing business as "Lilac Mixology and Catering," as well as "Amour World Market," currently residing in Augusta, Kennebec County, Maine.

## Facts

7. On April 9, 2024 (the "Filing Date"), Debtor filed a voluntary petition (the "Petition") under Chapter 7 of the Code.

8. Prior to the Filing Date, on October 7, 2023, Plaintiff filed a report with the Saco Police Department against Debtor under 17-A M.R.S.A §354(B)(1), Theft by Deception, and 17-A M.R.S.A § Deceptive Business Practices, asserting claims that Debtor obtained or exercised control over their property as a result of deception and with the intent to deprive Plaintiff of that property, and that the value of the property was over $10,000, and that she offered property or service, in any manner including advertising or other means of communication, as part of a scheme or plan with the intent not to sell or provide the advertised property or services at all, or

at the price or of the quality offered. *See* police report attached hereto as **Exhibit A**.

9. As stated in the police report, the complaint was not prosecuted as a result of Debtor's insistence that she did not owe Plaintiff a refund and that the matter was a "contract dispute."

10. Under oath, at her Section 341 Meeting of Creditors held on June 28, 2024, Debtor stated that she never intended to repay any money paid for services not rendered, and did not believe she actually owed Plaintiff the debt listed in her filings in this case because Plaintiff "didn't trust her."

11. The criminal complaint was referred to the Attorney General's office out of concern of possible bias motive, but Plaintiff was ultimately informed by Detective Berkovich via telephone that the Attorney General's office was unable to proceed on that complaint because the number of outstanding complaints against Debtor for fraudulent business practices made a bias motive improbable.

12. On January 6, 2023, Plaintiff and their spouse, Andie Danvers-Kidman (née Gobiel), entered into an agreement with Debtor for the provision of catering and bar services for Plaintiff's wedding on October 7, 2023 by paying a deposit of $6350.00. **(Exhibits B** and **C)**, which represented a $1200.00 bar service fee, in addition to 50% of the total cost of the catering agreement.

13. Prior to that payment, Debtor had assured Plaintiff numerous times via email that the total cost of services quoted would include all alcohol to be served at the open bar event, and Plaintiff relied on these statements prior to paying the initial deposit. Plaintiff and Debtor had also discussed substantial modifications to Debtor's standard wedding menu to allow for a lower per person cost while including open bar. **(Exhibits D** and **E)**

14. Debtor did not provide a time for a tasting and menu finalization prior to the 90-day

cancellation window listed in the contract (**Exhibit F**) and, as a result, Plaintiff agreed to a tasting inside the window with the mutual understanding that the second half of payment for services would be provided following the tasting.

15. At the tasting on August 20, 2023, Debtor stated that alcohol costs were not included in the price and would require additional payment. Plaintiff raised concerns later that day about the deviation from the agreement via text message and email.

16. Debtor refused to honor the original agreement, and began sending numerous text messages and emails (**Exhibit G**) to Plaintiff about her intent to purchase costumes and decorations with the final payment, resulting in a phone call where Plaintiff instructed Debtor to put the portion of the final payment that was earmarked for decor towards bar costs.

17. In reliance on Debtor's assurances that the second payment would be used towards supplies and staffing for their wedding, Plaintiff made the second payment of $5,150.00 to Debtor on August 21, 2023. (**Exhibit H**)

18. Under oath, at her Section 341 the Meeting of Creditors held on June 28, 2024, Debtor stated that she had no intention of using Debtor's money to pay for services for Plaintiff's wedding, and declined to explain how Plaintiff's money had been spent.

19. On August 30, 2023, Debtor made a posting on Facebook indicating that she could "no longer afford to do weddings" (**Exhibit I**).

20. On September 1, 2023, Debtor wrote Plaintiff via email to explain that she was currently experiencing "staffing shortages" but that she "remain(ed) committed to providing outstanding service." (**Exhibit J**)

21. On September 7, 2023, Debtor breached the contract entered into on January 6, 2023 by demanding an additional $1,500.00 in order to perform the contracted services (**Exhibit K**).

22. The contract contained no price change clause, but did contain a clause requiring the balance to be paid in full in the event of a cancellation less than 90 days before the wedding. Plaintiff entered the contract in reliance that Debtor's cancellation would result in a full refund if Debtor canceled less than 90 days from the wedding, and that the Debtor's refusal to perform without additional funds would have entitled Plaintiff to a full refund under the original terms of the contract. (**Exhibit B** at page 1, paragraph 3)

23. Under the duress of Debtor's threatened breach of contract, and with the understanding that the written contract explicitly allowed for menu changes up to 14 days before the event (**Exhibit B** at page 1, paragraph 9), Plaintiff reached out to Debtor with offered modifications in hopes of finding additional cost-savings measures to ease the burden of performing the contract on numerous occasions. (**Exhibit K**, page 3 at timestamp "Tue, Sep 7, 2023 at 9:47PM," and page 4 at timestamp "Mon, Sep 11, 2023 at 4:40PM.")

24. Debtor responded to these attempts at salvaging the contract on September 12, 2023, by stating that she would not perform services, and that she had interfered with permitting for Plaintiff's event, and would not be refunding any of the $11,500 paid towards services (**Exhibit K** page 6 at timestamp "Tue, Sep 12, 2023 at 6:14PM") despite numerous contract provisions to the contrary (**Exhibit B** at page 1, paragraphs 3, 9, and 11.) relied on by Plaintiff prior to paying Debtor.

25. Plaintiff reached out to Saco Police on September 12, 2023, after Debtor stated in writing that she would neither perform services, nor refund any of the full contract amount, and, on September 13, 2023, advised Debtor to consult with a lawyer about the potential criminal implications of her actions. (**Exhibit K** at page 5)

26. Attorney Terry Mitrenga began negotiating with Plaintiff on September 13, 2023, "as an

olive branch" with the purported intention of "deescalating" and negotiating a way for the contract to be performed as written and, in response, Plaintiff requested itemized per-piece food costs and detailed information about how Debtor planned to fulfill the contract. (**Exhibit L**)

27. In response to requests for itemized pricing and assurances of ability to perform the contract (**Exhibit M** at page 10, timestamp "Thu, Sep 10, 2023 at 7:12 PM"), Debtor sent an email on September 14, 2023, indicating that she would not be performing the contract for various reasons, including that "Lilac cannot afford to send a full bar staff to your location," (**Exhibit N**), in direct contradiction to written statements about staffing on September 1, 2023 and the contract executed on January 6, 2023. (**Exhibits J** and **B**).

28. Attorney Mitrenga emailed on September 15, 2023, indicating that Debtor would refund some money at some undisclosed point in time, but not prior to the point where Plaintiff explained that they would incur damages as a result of having to pay another set of vendors for the wedding three weeks away. (**Exhibit M** at page 15)

29. Following Attorney Mitrenga's communication on September 15, 2023, Plaintiff engaged Attorney Stan Tupper to continue negotiations on their behalf, and instructed Attorney Mitrenga to direct all further communications about the matter to Attorney Tupper.

30. Attorney Tupper never received any communication from Attorney Mitrenga and all communication between the parties stopped after the request to communicate through counsel on September 15, 2023.

31. Debtor filed Schedules and Statements in this case on April 9, 2024.

32. In the Schedules and Statements filed on April 9, 2024, Debtor indicated that she is the only person with a property interest in the 2013 Ford Edge listed there.

33. Debtor filed Amended Schedules and Statements on May 29, 2024, wherein she attempted to

add her spouse, Clark Phinney, as a Co-Debtor; in this filing, Debtor claimed Clark Phinney was the only person with a property interest in the 2013 Ford Edge listed on both filings.

34. Under oath, at her Section 341 Meeting of Creditors, Debtor testified incomprehensibly about the ownership of the Ford Edge, as well as several bank accounts she and/or her spouse own, giving several statements in conflict with her filings in this case about ownership of accounts and accounts being moved and/or closed.

35. In Debtor's Form 107 "Statement of Financial Affairs for Individuals Filing for Bankruptcy," Debtor answered question 18 (about whether she had sold or transferred assets within the last 2 years other than in the ordinary course of business) "no."

36. Under oath, at her Section 341 Meeting of Creditors, Debtor testified that she had, in fact, held a liquidation sale on all equipment, fixtures, and stock at Amour World Market in November of 2023, and that she had transferred funds from those sales to some undisclosed creditors less than a year before filing.

37. In both the Form 107 filed on April 9, 2024 and the Form 107 filed on May 29, 2024, Debtor indicated on page 4 that she had not paid any debts to an insider, or for an insider's benefit, within one year of filing.

38. Debtor stated in filings in this case that she co-owned Amour World Market and Lilac Mixology and Catering with her spouse, Clark Phinney.

39. As of the filing date, Debtor has made no attempt to repay any of the $11,500 owed to Plaintiff.

40. As of the filing date, Plaintiff is continuing to reach out to the York County District Attorney's office to have the criminal case reopened in light of admissions made in the filings of the present bankruptcy case, but has not yet received a response.

## COUNT I
### (Nondischargeability - 11 U.S.C. § 523(a)(2) and (c)(1))

41. Plaintiff repeats and realleges all allegations set forth above as if fully set forth herein.

42. Debtor made numerous false statements and representations on which Plaintiff relied before paying Debtor $11,500 for services not rendered.

43. Debtor's false statements included statements with regard to the inclusion of alcohol for an open bar in the price of the contract, statements regarding the intent to use Plaintiff's property towards the cost of supplies for Plaintiff's wedding, as well as the representation that Debtor intended to provide the services contracted at the agreed upon rate.

44. By initially representing that she would provide all alcohol for the event included with the price prior to receiving the first payment, Debtor made material misrepresentations to Plaintiff under false pretenses with the intent to obtain Plaintiff's property.

45. By representing that the second payment would be used towards supplies for Plaintiff's wedding, Debtor made material misrepresentations to Plaintiff with the intent to obtain Plaintiff's property.

46. By providing a written contract before payment stating that, in the event of a cancellation, the canceling party would be responsible for the full balance, and then canceling service while refusing to provide a refund, Debtor made material misrepresentations to Plaintiff with the intent to obtain Plaintiff's property.

47. By agreeing to provide services at a total rate of $11,500, before later demanding an additional $1,500 to perform the services without the agreed-upon included open bar, Debtor made material misrepresentations to Plaintiff with the intent to obtain Plaintiff's property.

48. Debtor's breaches and misrepresentations were willful and intentional, as demonstrated by

her threatened breach, attempts to interfere with Plaintiff's event permitting in response to Plaintiff's offer to modify under the duress of threatened breach, her refusal to either perform the contract or refund enough of the money paid days earlier to mitigate damages, her testimony during her Section 341 Meeting of Creditors, and clear bad faith in negotiations Plaintiff entered under duress to attempt to salvage performance of the contract.

49. The Debt owed to Plaintiff, therefore, is due to Debtor's false representations made with the purpose of obtaining Plaintiff's property and is nondischargeable pursuant to §§ 523(a)(2)(A), and 523(c)(1) of the Code.

**WHEREFORE**, Plaintiff, Bre Danvers-Kidman, respectfully requests that this Court enter an order (i) determining that the Debt that Debtor owes to Plaintiff is non-dischargeable and (ii) granting such other and further relief as is just and proper.

## COUNT II
### (Nondischargeability - 11 U.S.C. § 523(a)(6) and (c)(1))

50. Plaintiff repeats and realleges all allegations set forth above as if fully set forth herein.

51. Debtor's fraudulent misrepresentations and refusal to perform the contracted services or refund the money paid caused willful and malicious injury to Plaintiff by, among other things, willfully misappropriating Plaintiff's money to other clients, attempting to extort Plaintiff for an additional $1,500.00 to perform less than the agreed-upon services, forcing Plaintiff to secure new vendors less than three weeks before their wedding without refunding any of their money, forcing Plaintiff to duplicate efforts to obtain necessary permits for their wedding less than three weeks before the event date, intentionally acting to deprive Plaintiff of service and money, and

acting in bad faith in negotiations to secure either performance or rescission of the contract.

52. Thus, the Debt Debtor owes to Plaintiff is due to Debtor's willful and malicious injury to

Plaintiff and is nondischargeable pursuant to §§ 523(a)(6), and 523(c)(1) of the Code.


**WHEREFORE,** Plaintiff, Bre Danvers-Kidman, respectfully requests that this Court enter an

order (i) determining that the Debt that Debtor owes to Plaintiff is non-dischargeable and (ii)

granting such other and further relief as is just and proper.


## COUNT III
### (Discharge Eligibility – 11 U.S.C. § 727(a)(2)(A) and (a)(4)(A))

53. Plaintiff repeats and realleges all allegations set forth above as if fully set forth herein.

54. Debtor made numerous contradictory statements in her filings and under oath at her Section

341 Meeting of Creditors with regard to the ownership of her vehicle and several bank accounts.

55. Debtor transferred, or permitted to be transferred, her own property in the form of proceeds

from the liquidation sale of Amour World Market, to undisclosed parties.

56. Debtor also transferred, or permitted to be transferred, money Debtor had obtained by

representing that it would be used on services for Plaintiff.

57. The Transfers occurred within 1 year of filing, and were not disclosed in Debtor's Form 107

"Statement of Financial Affairs for Individuals Filing for Bankruptcy."

58. The Transfers were with the intent to hinder, delay, or defraud Plaintiff.

59. The Transfers were made within one year before the Filing Date.

60. Accordingly, Debtor is not entitled to a discharge pursuant to § 727(a)(2)(A) and (a)(4)(A) of

the Code.

**WHEREFORE**, Plaintiff, Bre Danvers-Kidman, respectfully requests that this Court enter an order (i) determining that Debtor is not entitled to a discharge and (ii) granting such other and further relief as is just and proper.

## COUNT IV
**(Recovery of Property – Federal Rules of Bankruptcy Procedure 7001(1), 14 M.R.S.A §3121-A(3))**

61.  Due to the extreme financial hardship suffered by Plaintiff as a result of Debtor's fraudulent and malicious conduct, Plaintiff respectfully requests that this Court order a Writ of Attachment to Debtor's future wages to recover the $11,500 taken from Plaintiff under false pretenses.

62. In the event this request is beyond the scope of this proceeding, Plaintiff respectfully requests this Court transfer this case to the appropriate venue after making a determination on the dischargeability of the debt.

**WHEREFORE**, Plaintiff, Bre Danvers-Kidman, respectfully requests that this Court enter an order (i) determining that Debtor is not entitled to a discharge and (ii) granting such other and further relief as is just and proper.

Dated: July 10, 2023

Respectfully submitted,

Bre Danvers-Kidman, Esq., ME Bar Number 5814, filing *pro se*

## EXHIBITS

**EXHIBIT A:** Saco Police Department Incident Report

**EXHIBIT B:** Contract for Catering Services with Lilac Mixology and Catering

**EXHIBIT C:** Receipt for payment of deposit on January 6, 2023

**EXHIBIT D:** Email correspondence from Kimberly Phinney on January 4, 2023 (twice confirming the inclusion of alcohol in the total price prior to first payment)

**EXHIBIT E:** Second email correspondence from Kimberly Phinney on January 4, 2023 (again confirming the inclusion of open bar in total price prior to first payment)

**EXHIBIT F:** Email correspondence with Kimberly Phinney on July 11, 2023 (requesting dates for tasting)

**EXHIBIT G:** Email correspondence from Kimberly Phinney on August 21, 2023 (indicating that the final payment would cover decor and staffing)

**EXHIBIT H:** Receipt for second payment made on August 21, 2023

**EXHIBIT I:** Screenshot of Kimberly Phinney's Facebook post on August 30, 2023 (indicating that she can no longer afford to do weddings)

**EXHIBIT J:** Email correspondence from Kimberly Phinney on September 1, 2023 (indicating Lilac's staffing shortages and continued commitment to service)

**EXHIBIT K:** Email correspondence with Kimberly Phinney from September 7, 2023 through September 13, 2023 (Debtor's demand for additional payment in the amount of $1,500 for contracted services, Plaintiff's replies attempting to ease the burden of performance on Lilac, and Debtor's subsequent cancellation of permits for the event)

**EXHIBIT L:** Email correspondence with Attorney Terry Mitrenga on September 13, 2023 (regarding Lilac's attempted cancellation without refund, clarifying request for itemized cost breakdown to proceed)

**EXHIBIT M:** Further email correspondence with Attorney Terry Mitrenga from September 14, 2023 to September 15, 2023 (regarding continued requests for Lilac to perform the contract and concerns about Lilac's willful and malicious interference with Plaintiff's ability to secure alternate vendors in the event Lilac decided not to perform.

**EXHIBIT N:** Email correspondence from Kimberly Phinney on September 14, 2023 (indicating that Lilac would not perform services and erroneously characterizing Plaintiff's offers to modify under the duress of Debtor's threatened breach as cancellation)



**Saco Police Department**
**Incident Report**

Page: 1
04/02/2024

Incident #: **23-1833-OF**
Call #: 23-21791

EXHIBIT A

Date/Time Reported: 10/08/2023 2238
Report Date/Time: 10/09/2023 0812
Status: Incident Open

Reporting Officer: Patrol Kyle Gregory
Approving Officer: Sergeant Daniel Beaulieu

Signature: _____

Signature: _____

| # | SUSPECT(S) | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1 | ▓▓▓▓ **KIMBERLY** ▓ | F | W | 52 | *********** | |
| | ▓▓ PLEASANT ST | | | | | |
| | AUGUSTA ME 04330 | | | | | |

**[APPEARANCE]**

GLASSES WORN: NO

| # | OFFENSE(S) | | | ATTEMPTED | TYPE | CLASS |
|---|---|---|---|---|---|---|
| | LOCATION TYPE: Residence/Home/Apt./Condo | | Zone: East 5 Zone | | | |
| | ▓▓▓ **BREANNE** ▓ | | | | | |
| | ▓ LAWN AVE | | | | | |
| | SACO ME 04072 | | | | | |
| 1 | THEFT BY DECEPTION | | | N | Felony | B |
| | 8431 | 17-A | 354.1.B.1 | B | | |
| | OCCURRED: 10/07/2023 0001 | | | | | |
| 2 | DECEPTIVE BUSINESS PRACTICES | | | N | Misdemeanor | D |
| | 4554 | 17-A | 901.1.H.1 | D | | |
| | OCCURRED: 10/07/2023 0001 | | | | | |

| # | VICTIM(S) | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1 | ▓▓▓ **BREANNE** ▓ | F | W | 35 | *********** | ▓▓▓▓ |
| | ▓ LAWN AVE | | | | | |
| | SACO ME 04072 | | | | | |

Saco Police Department
**Incident Report**

Page: 2
04/02/2024

### Incident #: 23-1833-OF
### Call #: 23-21791

| # | VICTIM(S) | | | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|---|
| 2 | ▉▉▉ ANDREW ▉ | | | M | W | 37 | *********** | ▉▉▉▉ |
| | ▉▉ LAWN AVE | | | | | | | |
| | SACO ME 04072 | | | | | | | |

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 1 | **11,500 CATERING PAYMENT** | | Stolen |

QUANTITY: 1  VALUE: $11,500.00
SERIAL #: NOT AVAIL
DATE: 10/09/2023
OWNER: ▉▉▉▉ BREANNE ▉

| 2 | **11,500 CATERING EVENT** | | Stolen |
|---|---|---|---|

QUANTITY: 1  VALUE: $0.00
SERIAL #: NOT AVAIL
DATE: 10/11/2023
OWNER: ▉▉▉▉ BREANNE ▉

Attachments for 23-1833-OF

| Description | Type |
|---|---|
| ▉▉▉▉ EMAIL | PDF |
| Attachment#: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ | |
| NO COMPLAINT | PDF |
| Attachment#: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ | |

Saco Police Department

NARRATIVE FOR PATROL KYLE N GREGORY

Ref: 23-1833-OF

Body Cam Not Available

October 8, 2023

2100 hours

I, Officer Kyle Gregory spoke with Breanne ▓▓▓▓▓▓▓▓ on the phone regarding her not receiving services she paid for. Breanne and her partner Andrew ▓▓▓▓ hired *Lilac Mixology & Catering* out of Augusta, Maine to cater their wedding on October 7, 2023. Breanne and Andie had paid the company a total $11,500.00 for the cost of catering of food and bar services. The company had not been heard from several weeks leading up to the wedding and advised Breanne that they were cancelling the services for her event all together without issuing a refund. Breanne and Andie had been in contact with the owner *Kimberly* ▓▓▓▓▓▓▓▓▓▓ who is the owner of the Lilac Mixology & Catering. The following is a synopsis of the investigation.

On December 30, 2022, at approximately 8:21 A.M. hours a request was submitted to Lilac Mixology & Catering via email regarding the wedding event. On January 1, 2023, at approximately 3:02 P.M. Lilac Mixology & Catering responded to the request. The email content is Lilac Mixology & Catering explaining what they offer and suggesting a phone conversation to further discuss the event. The caterer claims they are able to work with any budget with their pricing tending to run $65 and up per person. The email states a minimum of $6,500.00 is required. The email also states the bar reservation is a non-refundable $1,500.00 and costs increase depending on the type of bar package selected. ▓▓▓▓▓▓▓▓ me the initial quote was roughly $20,000.00, which was out of their price point, ▓▓▓▓▓▓▓ a simpler menu (removing the higher cost meats etc.) was able to be created by Kimberly for about half the cost (including the bar according to the email) for $11,500.00 (for food and beverage). On January 6, 2023, a deposit was paid of $6,350.00 to Lilac Mixology & Catering (Ref. Invoice #090990) for the updated menu.

The contract dated is January 4, 2023. In the contract line #3 states "*In the event that either party wishes to terminate this Agreement, that party will be required to provide a notice period of a minimum of 90 days or will be required to pay the remaining balance in full.*" On August 21, 2023, the remaining $5,150.00 was paid by Breanne (Ref. Invoice #62258).

On August 20, 2023, Breanne had a tasting with the company. At the tasting, Kimberly and her husband presented air fryer appetizers and "mini pizzas". Breanne decided to pick that for their food options. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

STATE POLICE DEPARTMENT
NARRATIVE FOR PATROL KYLE N GREGORY

Ref: 23-1833-OF



▓▓▓▓▓▓▓▓, they were asked if they had a hard time finding a caterer because they are "queer". The conversation then changed towards the cost of liquor, even though they allegedly agreed upon an open bar. When Breanne returned home, she received an email explaining the open bar that was discussed would be at least an additional $5,500.00. ▓▓▓▓▓▓ showing Kimberly the email that states the alcohol is included. ▓▓▓▓▓▓▓▓▓ to open bar for beer and wine with a punch, and spirits for purchase.

On August 21, 2023, Breanne received an email from ▓▓▓▓▓▓▓▓ that she wanted to order carnival costumes for the staff for the wedding (having it carnival theme). ▓▓▓▓▓▓▓ the final deposit is what covers the décor and staffing, and that when Breanne is able to, to make the final payment so the order can be made. Breanne made the remaining $5,150.00 at 7:00 P.M. (Ref. Invoice #62258).

On September 1, 2023, Lilac Mixology & Catering sent an email out that they were having staffing issues. They claim their lines of communication are open and encourage people to message or email with any questions they may have. Breanne wrote in her statement she figured their guests could be patient.

On September 7, 2023, at 10:33 A.M. (one month before the wedding), Breanne received an email from Kimberly advising the new cost of the wedding catering would require an additional $1,500.00 due to the rising costs of goods. ▓▓▓▓▓▓ asking for a detailed menu of the alcohol, staffing, setup, etc. before moving forward; she also wants to know if there will be any additional costs after the event. ▓▓▓▓▓▓▓ that she found another vendor who is willing to do the entrees for half the price that they had already paid. ▓▓▓▓▓▓▓ would be willing to refund the last payment ($5,150.00) and just provide the bar service.

On September 8, 2023, at 1:08 P.M, ▓▓▓▓▓▓ that her food costs up are 15% across the board, but moving forward she will take the cost on herself and honor the price to make sure it goes perfect for Breanne. ▓▓▓▓▓▓ at 8:39 P.M. that she is comfortable going with the plan proposed last night (refund and possibly going with another caterer for the food portion) and asks Kimberly for her input on this.

On September 11, 2023, at 4:40 P.M. ▓▓▓▓▓▓ she is trying to make sure that Kimberly is not stretched too thin and trying to do the event. ▓▓▓▓▓▓ they are willing to troubleshoot other pieces if they can make it run more smoothly,

Saco Police Department    Page: 3

NARRATIVE FOR PATROL KYLE N GREGORY

Ref: 23-1833-OF

██████████████ where she is at on the idea.

On September 12, 2023, at 6:14 P.M. ███████████ that "*Brie, This is not a significant deviation as at no time in our communication to you did we indicate we would be eliminating services for your event. It is unfortunate that you have opted to proceed with another catering service provider for your event . As we gave you a bundled package with our bar services price being greatly reduced, they are not available for separation from the catering. As you have opted for another catering provider, we will not be providing bar services for your event. We have notified the town of Saco that we will not be the licensed bartender of record for your event and any permits required will not be issued in our name. As per your contract all monies paid are non-refundable.*"

On September 14, 2023, at 9:57 P.M. ███████████ that due to Breanne's email on September 7 about securing another vendor, and the price per person being below the company per person cost, the request is denied ██████ never stated she had secured another vendor according to the emails on September 7; suggestions were being made as a way to take the stress of Kimberly due to the lack of staffing and increase in food costs that she had brought up). ████████ ████████ "*Lilac will accept your cancelation of catering services stated by you on 9/8/23, and Lilac will accept the cancelation of the bar service for the following reasons:*"

- *Cost per person is tremendously lower then agreed upon in our contract*

- *Catering/bar contracts were dependent on the execution of both contracts from Lilac*

- *The concerns for our team's safety, as you have stated the law enforcement has already been called against Lilac*

- *Lilac has tried to come to an agreement, even bringing in a mediator, but has only received hostile responses and threats*

*Due to these concerns and actions on the part of the couple, Bre ██████ & Andie ██████, Lilac will not be performing at the Ferry Beach Wedding on October, 2023*"

As of October 10, 2023, no money has been refunded and no further contact has been made. Breanne has provided very detailed email conversations and receipts. Breanne has not heard back from Kimberly after replying explaining that she was trying to negotiate with her in an attempt to make the event easier for her to manage. Kimberly and *Lilac Mixology &*

SACO POLICE DEPARTMENT
NARRATIVE FOR PATROL KYLE N GREGORY

Ref: 23-1833-OF

*Catering* never showed up for the wedding nor were any services provided. Breanne made a post online reviewing her experience with *Lilac Mixology & Catering*. Breanne was messaged on Facebook by *CJ* ▓▓▓▓ who had a similar experience. In the message, *CJ* ▓▓▓▓ ▓▓▓▓ two days before the wedding the company needed an extra $2,500 to do the event due to the rising cost of food.

Based on what was provided by Breanne, she never stated she would be going with another caterer. Breanne was attempting to negotiate a way to take the burden off of Kimberly that she was open about (rising cost of food, need of staff workers). Kimberly and Lilac Mixology & Catering created an impression that the company would be catering the wedding event on October 7, 2023 based on the conversations and payment of services that were made which violates 17 – A §354.1B.1; a Class B crime. Lilac Mixology & Catering offered a service of catering the wedding with no intent to provide the services which violates 17 – A §901.H; a class D crime.

**March 25, 2024**

1530 hours

After numerous back and forth calls over the last few months, I received emails from Kimberly between her and Breanne regarding this case. I have printed the emails to have them attached. Kimberly also provides emails between her attorney and Breanne pertaining to the case. After reviewing the emails between both parties, and Kimberly's attorney's emails with Breanne, the attorney trying to come to a resolution pertaining to Kimberly catering the event, discussion with the Attorney General's Office, and discussion/screening with the York County DA's Office, it appears this is a civil matter and no charges will be pursued.

The Attorney General's Office advised me there was nothing they could do due to the fact that Lilac Mixology & Catering has gone out of business; but recommended Breanne still file a complaint on their website. Breanne and Kimberly have been advised this is a civil matter and no charges will be pursued. Breanne was advised she can proceed with a civil case against Kimberly if she wished to.

Sacto Police Department
NARRATIVE FOR PATROL KYLE N GREGORY

Ref: 23-1833-OF

*Exhibit B*



**MIXOLOGY & CATERING**

# Wedding Day Catering Contract
# Andie Gobeil ~ October 7, 2023

THIS AGREEMENT FOR CATERING SERVICES (this "Agreement") dated January 4, 2023  BETWEEN Andie Gobeil  (the "Customer") - AND - Lilac Catering, of 185 Northern Ave, Augusta ME 04330 (the "Catering Service") OF THE SECOND PART. BACKGROUND: A. The Customer is of the opinion that the Caterer has the necessary qualifications, licenses, experience and abilities to provide services to the Customer.

B. The Caterer is agreeable to providing such services to the Customer on the terms and conditions set out in this Agreement. IN CONSIDERATION OF the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

1. The Customer hereby agrees to engage the Caterer to provide the Customer with services (the "Services") consisting of (as noted):
☐ Cooking the agreed Menu
☐ Delivering of food
☐ Serving of food
☐ Providing all catering and service staff as may be necessary to provide the agreed services
☐ Removal of all trash from event area - We DO NOT remove trash from venue premise
☐ Delivery Charges/ Fuel Charges

2. The term of this Agreement will begin on the date of this Agreement and will remain in full force and effect until the completion of the Services, subject to earlier termination as provided in this Agreement, with the said term being capable of extension by mutual written agreement of the parties.
3. In the event that either party wishes to terminate this Agreement, that party will be required to provide a notice period of a minimum of 90 days or will be required to pay the remaining balance in full.
4. Except as otherwise provided in this Agreement, the obligations of the Caterer will terminate upon the earlier of the Caterer ceasing to be engaged by the Customer or the termination of this Agreement by the Customer or the Caterer.
5. The parties agree to do everything necessary to ensure that the terms of this Agreement take effect.
6. For the services rendered by the Caterer as required by this Agreement, the Customer will pay to the Caterer compensation on the following basis: Payment can be made by the number or type of menu items, number of guests, per plate, number of servers required for event, or any other formula the parties pay agree to. (e.g. $20.00 per plate).
7. This compensation will be payable as outlined in sections 2, 11-13 and elsewhere in this agreement.
8. The Customer is entitled to deduct from the Caterer's compensation any applicable deductions and remittances as required by law.
9. Menu and Guest Guarantees. The agreed deadline to make changes to the menu is as follows: The Customer may notify the Caterer of desired changes to the menu up until fourteen (14) business days before the event).
10. The agreed deadline to confirm the number of guests is as follows: The Customer is required to confirm the number of guests expected sixty (15) days before the event.
11. Matters relating to the agreed amount and use of the deposit are as follows: The Customer will pay a deposit in the amount of 50% of the quoted total services amount to be applied as a down payment against the total cost of catering the event. The Caterer reserves the right to not refund the deposit for any cancellations made. The client

retains the right to reschedule the catering services to another date or event.

12. The agreed deadline for cancellation is as follows: The Customer may cancel the event with the Caterer up until ninety (90) days before the date of the event. After this time the Customer is liable for a cancellation penalty upon cancellation. Any cancellation of the event after the cancellation deadline will result in the following: If the Customer cancels past the cancellation deadline, the Customer is required to pay the total costs of catering the event.

13. The remaining balance due for catering services will be paid in accordance with the following schedule: The remaining 50% of balance paid in full 60 days prior to the start of the event. Payment may be in cash, check, or with a major credit card. Any outstanding balance not paid by the day of event will be subject to a 10% service charge for late payment every 60 days until paid.

14. The Caterer will not voluntarily or by operation of law assign or otherwise transfer its obligations under this Agreement without the prior written consent of the Customer.

15. It is expressly agreed that the Caterer is acting as an independent contractor and not as an employee in providing the Services under this Agreement. The Caterer and the Customer acknowledge that this Agreement does not create a partnership or joint venture between them, and is exclusively a contract for service.

16. Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

17. It is agreed that there is no representation, warranty, collateral agreement or condition affecting this Agreement except as expressly provided in this Agreement.

18. It is understood and agreed that the Caterer will have no liability to the Customer or any other party for any loss or damage (whether direct, indirect, or consequential) which may arise from the provision of the Services. 19. The Caterer will indemnify and hold the Customer harmless from any claims against the Customer by any other party, arising directly or indirectly out of the provision of the Services by the Caterer.

20. In the event that any of the provisions of this Agreement are held to be invalid or unenforceable in whole or in part, all other provisions will nevertheless continue to be valid and enforceable with the invalid or unenforceable parts severed from the remainder of this Agreement.

21. The waiver by either party of a breach, default, delay or omission of any of the provisions of this Agreement by the other party will not be construed as a waiver of any subsequent breach of the same or other provisions.

IN WITNESS WHEREOF the parties have duly executed this Catering Agreement.

**_Contract Valid until close of day -January 6, 2023 ~ 9:00am_**


Kimberly P Phinney                                          _____
Lilac Catering                         ~ Electronic Signature Customer (Paid Deposit is Equal to signature)



**MIXOLOGY & CATERING**

# EVENT BEVERAGE SERVICE AGREEMENT
## October 7, 2023

THIS AGREEMENT FOR BEVERAGE SERVICES (this "Agreement") dated this January 7, 2023 BETWEEN Andi Gobeil (the "Customer") - AND - Lilac Mixology, of 185 Northern Ave, Augusta ME 04330 (the "Beverage Service") OF THE SECOND PART. BACKGROUND: A. The Customer is of the opinion that the Beverage Service has the necessary qualifications, licenses, experience and abilities to provide services to the Customer.

B. The Beverage Service is agreeable to providing such services to the Customer on the terms and conditions set out in this Agreement.

C. The customer agrees to pay the non refundable bartending fee of $1200.00 upon signing the contract

IN CONSIDERATION OF the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

1. The Customer hereby agrees to engage the beverage service to provide the Customer with services (the "Services") consisting of (as noted):

☐ Providing all bar and service staff as may be necessary to provide the agreed services
☐ Removal of all trash that is produced after catering services are complete
☐ Providing Bar and Beverage services (see beverage services agreement for specific details)
☐ Delivery Charges/ Fuel Charges
☐ Removal of bottles/returnables

2. The term of this Agreement will begin on the date of this Agreement and will remain in full force and effect until the completion of the Services, subject to earlier termination as provided in this Agreement, with the said term being capable of extension by mutual written agreement of the parties.

3. In the event that either party wishes to terminate this Agreement, that party will be required to provide a notice period of a minimum of 90 days or will be required to pay the remaining balance in full.

4. Except as otherwise provided in this Agreement, the obligations of the beverage service will terminate upon the earlier of the beverage service ceasing to be engaged by the Customer or the termination of this Agreement by the Customer or the beverage service.

5. The parties agree to do everything necessary to ensure that the terms of this Agreement take effect.

6. The Customer is entitled to deduct from the beverage service's compensation any applicable deductions and remittances as required by law.

7. Bar and Guest Guarantees. The agreed deadline to make changes to the Bar options is as follows: The Customer may notify the beverage service of desired changes to the bar up until fourteen (14) business days before the event).

8. The agreed deadline to confirm the number of guests is as follows: The Customer is required to confirm the number of guests expected sixty (60) days before the event.

9. The beverage service reserves the right to a nonrefundable beverage service fee of $1200.00 for any cancellations made. The client retains the right to reschedule the catering services to another date or event.

10. The beverage service will not voluntarily or by operation of law assign or otherwise transfer its obligations under this Agreement without the prior written consent of the Customer.

11. It is expressly agreed that the beverage service is acting as an independent contractor and not as an employee in providing the Services under this Agreement. The beverage service and the Customer acknowledge that this Agreement does not create a partnership or joint venture between them, and is exclusively a contract for service.

12. Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

13. It is agreed that there is no representation, warranty, collateral agreement or condition affecting this Agreement except as expressly provided in this Agreement.

14. It is understood and agreed that the beverage service will have no liability to the Customer or any other party for any loss or damage (whether direct, indirect, or consequential) which may arise from the provision of the Services.

15. The beverage service will indemnify and hold the Customer harmless from any claims against the Customer by any other party, arising directly or indirectly out of the provision of the Services by the beverage service.

16. In the event that any of the provisions of this Agreement are held to be invalid or unenforceable in whole or in part, all other provisions will nevertheless continue to be valid and enforceable with the invalid or unenforceable parts severed from the remainder of this Agreement.

17. The waiver by either party of a breach, default, delay or omission of any of the provisions of this Agreement by the other party will not be construed as a waiver of any subsequent breach of the same or other provisions.

IN WITNESS WHEREOF the parties have duly executed this Catering Agreement.


Lilac Mixology & Catering Services

_____

Lilac Catering~Electronic Signature Customer (Paid Deposit Is Equal to signature)



**Lilac Mixology & Catering**
12 Pleasant St
Apt 2, augusta, ME 04330 United States
hello@lilaccatersme.com | 207-213-7881

EXHIBIT C

Invoice #090990

**Issue date**
Jan 6, 2023

# Wedding Day Deposit for Bar & Catering

All Contracts are completed and signed once Deposit is made.

We appreciate your business.

| Customer | Invoice Details | Payment |
|---|---|---|
| Andi Gobeil | PDF created September 13, 2023 | Due January 6, 2023 |
| theandsymbol@gmail.com | $6,350.00 | $6,350.00 |
| | Service date October 7, 2023 | |

| Items | Quantity | Price | Amount |
|---|---|---|---|
| Catering | 1 | $5,150.00 | $5,150.00 |
| Bar Fee | 1 | $1,200.00 | $1,200.00 |
| Subtotal | | | $6,350.00 |
| Included Tax ($470.37) | | | |

## Total Paid $6,350.00

**Payments**
Jan 6, 2023 (Visa 8270)                                                        $6,350.00



**View online**
To view your invoice go to https://squareup.com/u/GF0ueOc7
Or open the camera on your mobile device and place the QR code in the camera's view.

Page 1 of 1

# M Gmail

Bre Kidman <bre.kidman@gmail.com>

## Re: New submission from Contact Us
7 messages

**Andie Gobeil** <theandsymbol@gmail.com>
To: hello@lilaccatersme.com
Cc: Bre.kidman@gmail.com

Wed, Jan 4, 2023 at 5:50 AM

Thank you for getting back to me so quickly! Everything you said sounds fantastic, and we'd like to schedule a conversation at your earliest convenience. My number is 401 258 8905, and the best time to call would be before 9a or after 4p, as I work nights. Thank you again, and I look forward to speaking with you.

On Sun, Jan 1, 2023, 15:02 hello@lilaccatersme.com <hello@lilaccatersme.com> wrote:

Congratulations!

We are a custom Catering and Mixology company so working with us is a bit different than other providers, we design everything just for you over a conversation to make sure that we create a custom menu that moves your daughter's event from memorable to unforgettable. We can work within any budget and just about any food style desired from a simple cookout, to a buffet, to a multi-course plated dinner, BBQ, Pig Roast, Home cooking, Vegetarian, Gluten Free, etc. We specialize in special requests, our menus tend to run $65 per guest and up, with a minimum of $6500.

The next best step is to set up a time to connect to talk more, we can do this in person, via phone, email, or even video conference link to make it easy and convenient for you. This can lasts anywhere from 30 minutes and lets us get a chance to learn more about you and your theme, plans already in place for your event, and what your budget and thoughts are on the type of services you are interested in. It is also a chance for you to ask questions of us and learn a bit about our style and ideas we might have as well.

From that conversation we set to work creating a custom menu and proposal for you keeping what we have learned and your budget in mind and we then give you a chance to review and ask questions,make adjustments, etc. The entire process is an ongoing conversation to make sure everything is thought of and covered so when you sign your service agreement you know it is just how you want it and there are no surprises.

We are also a full service bar service so we are a bit different from many of the other services in the area in that we provide all items needed for your event, including the alcohol itself. You do not need to purchase separate alcohol stock or supplies as we provide all of that with our service. Even the ice and garnishes are included.

We handle everything from a full cash bar with each customer paying per drink to a fully hosted open bar and just about everything in between. We proudly feature all Maine made craft beers in our beer selections as well as select items from Cellar Door Winery as well as part of our premium wine offerings to provide a local element to your event.

Our bar service reservation is $1,500 which is non refundable and holds your date for our bar team, covers all necessary local and state permits for your event, as well as the base service hours for the bartenders. Additional costs beyond that would depend on your type of event. For a basic cash based bar that is your only cost for the event as your customers would pay per drink at time of service. For a blended style or a full open bar the costs are based either on desired covered amount (for example $2,500 for cocktail hour only etc.) or the full cost of the end of night tab for an open bar. We have worked with multiple scenarios so can talk more about some of the options you have available and recommend the most affordable based on both your budget and desired event style.

9/15/23, 11:14 AM

Gmail - Re: New submission from Contact Us

Our team lead is  also a WSET level II certified Wine and Spirits professional which allows us to create custom drinks for your event as well as provide consultation and pairing services so your beverage service compliments your catering selections as well.

We are available to schedule a time to connect to talk more at your convenience so just let us know a couple dates and times that work for you.  We look forward to talking more very soon.  I have added a sample menu for you to review.

Again, everything is a conversation with Lilac!

Thank you

Kim

----Original Message----
From: admin@townsquareinteractive.com
Sent: Friday, December 30, 2022 8:21am
To: hello@lilaccatersme.com
Subject: New submission from Contact Us

**Name**

Andie Danvers

**Phone**

(207) 553-0996

**Email**

theandsymbol@gmail.com

**Event Location**

Ferry Beach State Park
Saco, Maine 04072
United States
Map It

**Date of Event**

10/07/2023

**Number of Guests**

150

**Message/Suggestions**

I am planning a tent wedding at Ferry Beach State Park for 10/07/23, with set up planned for 10/06 and take-down on 10/08, and would like to discuss pricing and availability.

**Andie Gobeil** <theandsymbol@gmail.com>
To: Bre.kidman@gmail.com

Wed, Jan 4, 2023 at 5:48 PM

---------- Forwarded message ----------
From: hello@lilaccatersme.com <hello@lilaccatersme.com>
Date: Wed, Jan 4, 2023, 09:41
Subject: Re: New submission from Contact Us
To: Andie Gobeil <theandsymbol@gmail.com>
Cc: <bre.kidman@gmail.com>

Hello

Thank you so much for talking to me this morning!
It was a wonderful call, gave a little smile for the day!

I have attached our contracts for bar and catering, in a second email you will receive an invoice for the deposit, this can be made right online by card or ACH. Once the deposit is completed we can then move forward with details, tastings, etc.
I have also saved the date for you and the hold will be removed by Friday morning.

I have also attached our Planner Package just in case you are interested, especially for day of.

Have a wonderful Day!
Thank you again!

Kim
[Quoted text hidden]

**3 attachments**

🗎 **Lilac Plannner Packages 1.4 - Google Docs.pdf**
60K

🗎 **Andi Gobeil EVENT BEVERAGE SERVICE AGREEMENT - Google Docs.pdf**
60K

🗎 **Andie Gobeil Wedding Day Catering Contract - Google Docs.pdf**
77K

---

**Bre Kidman** <bre.kidman@gmail.com>
To: Andie Gobeil <theandsymbol@gmail.com>, hello@lilaccatersme.com

Wed, Jan 4, 2023 at 6:32 PM

Hey Kim!

It was wonderful talking with you this morning! We're really excited about working with you and just have a couple questions to clarify:

-Does $10,850 represent the total cost or the 50% deposit amount?

9/15/23, 11:14 AM

Gmail - Re: New submission from Contact Us

-The bar service agreement doesn't say whether it includes alcohol and I wondered if maybe I was sleepy and forgot that part of the conversation this morning?
-Does the amount quoted include plates/utensils?
-Would you be open to negotiating trash removal at an additional cost (because it's a state park and I'm not sure how to get it away from the event space without getting it out of the venue)?

Sorry—this all sounds silly when I read it but I realized I couldn't answer the question and figured it's better to be clear. :) We were both super happy and excited after talking with you this morning and are already feeling more at ease about putting this thing together :)

Have a great night!
Bre (and Andie)

On Jan 4, 2023, at 5:48 PM, Andie Gobeil <theandsymbol@gmail.com> wrote:

[Quoted text hidden]

**3 attachments**

📄 **Lilac Plannner Packages 1.4 - Google Docs.pdf**
60K

📄 **Andi Gobeil EVENT BEVERAGE SERVICE AGREEMENT - Google Docs.pdf**
60K

📄 **Andie Gobeil Wedding Day Catering Contract - Google Docs.pdf**
77K

**Catering** <hello@lilaccatersme.com>
To: Bre Kidman <bre.kidman@gmail.com>

Wed, Jan 4, 2023 at 6:59 PM

Hello!

The invoice is half the total, so when you have your final numbers, we will then adjust the second invoice up and down based on your actual headcount

Yes, our bar contract covers all alcohol so it is beer, spirits, and Wine as well as not alcoholics. Plus, we also do a his and hers drink no additional charge.

We absolutely can talk about the trash Móvil just as long as we discussed ahead of time, I can make sure I have the right vehicles there to remove it 😊

It does not include plates and utensils, but as I mentioned this morning, BB rentals in Livermore Falls has a great pricing on all of that. We do bring the cups for the bar and we bring the utensils and plates for the cocktail hour where those are disposable.

If you're considering disposable, we can offer you a plastic version that she was just about anywhere. You can find them at Walmart or on Amazon they're a harder plastic they have either silver or gold rim. I've used them several times. I can also suggest you napkins that are disposable, but they are so close to letting ylf you're. considering disposable, we can offer you a plastic version that is used just about anywhere. You can find them at Walmart or on Amazon. They're a harder plastic they have either silver or gold rim. I've used them several times. I can also suggest you napkins that are disposable, but they are so close to linen you could not tell until you touched it.

I hope this helps
Thank

Kim

Sent from my iPhone

On Jan 4, 2023, at 6:32 PM, Bre Kidman <bre.kidman@gmail.com> wrote:

[Quoted text hidden]
<Lilac Planner Packages 1.4 - Google Docs.pdf>

<Andi Gobeil EVENT BEVERAGE SERVICE AGREEMENT - Google Docs.pdf>

<Andie Gobeil Wedding Day Catering Contract - Google Docs.pdf>

---

**Bre Kidman** <bre.kidman@gmail.com>
To: Catering <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Wed, Jan 4, 2023 at 8:37 PM

Hey!

Thanks for clarifying! So, bottom line: it would be $21,700 total (give or take) for food/beverage/service for 150 people? And also includes the insurance required for alcohol on state property? (I have the contract from the park and had "buy event insurance" on my to do list today!)

So, I'm afraid to say this because I don't wanna lose your enthusiasm, but I think we'd probably consider taking the head count down a little bit at that price point— or maybe negotiating some menu limitations to keep costs down if you're open to that? We really, really liked your whole approach and were talking about how nice it would be to reach out to BB Rentals and have sort of a coordinated friendly vibe for the day, so if you say "this is the bare minimum price point at which this wedding seems like something I want to do," I'm not 100% out. BUT: full disclosure, our budget for the whole wedding is in the 15-20k ballpark and the quotes we're seeing for tents/heaters/tables/chairs are all coming in around 5K-7K, so there's a little worry creeping up in there.

I'm comfortable/excited about pre-building out decor and design stuff (I'm a multimedia artist, so that's the fun part ☺) and assigning numerous capable uncles and cousins to set up. I feel good about following up with folks and coordinating once I've got contracts secured, but to be honest we are sort of starting to feel a pinch around securing tent/heat/power/restrooms alongside the food/bev hunt we've been on and I guess I'm wondering: as someone who plans weddings, does this budget strike you as unrealistic/impossible to work with?

This is also cheesy as hell but I'm gonna throw it out there because you miss all the shots you don't take: I write a biweekly column for the Portland Phoenix and would be glad to write a column devoted to highlighting the gems of central Maine's food scene or outstanding wedding vendors if that might add appeal to our

package (though I definitely know exposure doesn't pay anyone's bills).

Will you let me know what you think? Again: we really, REALLY don't wanna alienate you with these questions but are also trying to figure out how to make some rather daunting financial decisions. We really want to make this work! 😅

Thanks so much. Hope to talk more soon!
Bre

On Jan 4, 2023, at 6:59 PM, Catering <hello@lilaccatersme.com> wrote:

Hello!
[Quoted text hidden]

---

**Andie Gobeil** <theandsymbol@gmail.com>
To: Bre Kidman <bre.kidman@gmail.com>

Tue, Jul 4, 2023 at 1:46 AM

[Quoted text hidden]

---

**Andie Gobeil** <theandsymbol@gmail.com>
To: Bre Kidman <Bre.kidman@gmail.com>

Mon, Aug 21, 2023 at 5:43 PM

[Quoted text hidden]

## M Gmail

Bre Kidman <bre.kidman@gmail.com>

### Menu Options 12.19.pdf
1 message

**Catering** <hello@lilaccatersme.com>
To: Bre Kidman <bre.kidman@gmail.com>, Andie Gobeil <theandsymbol@gmail.com>

Wed, Jan 4, 2023 at 10:09 PM

Hey there!

My email provider is working out some issues we are having, we are never positive it gets out!  So it's been a long week
So let's get within your budget, here's a menu I've done a little while ago. It's cut back and should fit into your budget. Much better. It's about half the cost but still
include the bar and a lot of the details that we talked about. The biggest thing is removed are the tenderloins in the pork lines, the higher costing meats. Let me
know what you think and we can go from there. I'll update the invoice to show this new price and if it still doesn't work, let me know and we'll see what we can do.
Kim

Sent from my iPhone

**Menu Options 12.19.pdf**
45K

EXHIBIT F

# M Gmail

Bre Kidman <bre.kidman@gmail.com>

## Tasting?
9 messages

**Bre Kidman** <bre.kidman@gmail.com>
To: hello@lilaccatersme.com
Cc: Andie Gobeil <theandsymbol@gmail.com>

Tue, Jul 11, 2023 at 5:11 PM

Hey Kimberly!

Andie and I are fully in the swing of wedding planning and wanted to check in with you about talking menu and planning a tasting! I'm sure you all are slammed with the summer season, but let us know what you think about getting something together?

Hope you're doing well! Thanks!
Bre

**Kimberly Phinney** <hello@lilaccatersme.com>
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Wed, Jul 12, 2023 at 1:13 PM

Hello!

Thank you for reaching out!
here are a few dates we have available for your tasting!!

August 12,13,19,20
September 2,3

Thank you
Kim

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Tuesday, July 11, 2023 5:11 PM
**To:** Kimberly Phinney <hello@lilaccatersme.com>
**Cc:** Andie Gobeil <theandsymbol@gmail.com>
**Subject:** Tasting?

[Quoted text hidden]

**Bre Kidman <bre.kidman@gmail.com>**
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thu, Jul 13, 2023 at 11:39 PM

Hey Kim!

Let's do 8/20? That's our dating anniversary, so it seems fitting :)

What time? Where? Other questions? 🤷

So excited!!
Bre

On Jul 12, 2023, at 1:13 PM, Kimberly Phinney <hello@lilaccatersme.com> wrote:

[Quoted text hidden]

---

**Kimberly Phinney <hello@lilaccatersme.com>**
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Fri, Jul 14, 2023 at 11:08 AM

Hello!

That works out perfectly!!

Lets plan on 11:30 at our storefront

Amour Market
212 Water St
Augusta 04330

Come hungry!  And we will walk through your day together!!

Kim

---

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Thursday, July 13, 2023 11:39 PM
**To:** Kimberly Phinney <hello@lilaccatersme.com>

Cc: Andie Gobeil <theandsymbol@gmail.com>

**Subject: Re: Tasting?**

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Fri, Jul 14, 2023 at 7:27 PM

Wonderful! We're so excited!!

[Quoted text hidden]

**Kimberly Phinney** <hello@lilaccatersme.com>
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Wed, Aug 16, 2023 at 3:09 PM

Hello

I just wanted to follow up and see if there is anything special you would like to try Sunday?

If you do have a selection send it to me and I will focus on it, otherwise I will do a few samples of each list!

Can't wait to see you!!
Kim

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Friday, July 14, 2023 7:27 PM

[Quoted text hidden]

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thu, Aug 17, 2023 at 1:52 AM

Hey Kim!

The last time we talked, we were talking about grazing board, robust appetizers, and pizzas all night? Fairy carnival finger food paradise?

Beyond that.... I know my dad really wants bacon wrapped scallops, so probably those. Would also really love to shore up a vegan option for app/pizza, cuz we have a solid bunch of vegan folks.

Some other food stuff that's probably helpful to note: mustard, horseradish, and bleu cheese are all vibe killers for me, so I'd cross off anything centered on those. I dunno how much that narrows things down but we can definitely talk sometime before Sunday if it's easier :)

Thanks!! Looking forward to it!!
B

On Aug 16, 2023, at 3:09 PM, Kimberly Phinney <hello@jilaccatersme.com> wrote:

[Quoted text hidden]

---

**Kimberly Phinney** <hello@jilaccatersme.com>                    Thu, Aug 17, 2023 at 9:42 AM
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thank you for this information!
Okay so let's have fun on Sunday!!!

Can't wait to see you!
Kim

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Thursday, August 17, 2023 1:52 AM
[Quoted text hidden]

[Quoted text hidden]

---

**Bre Kidman** <bre.kidman@gmail.com>                    Thu, Aug 17, 2023 at 6:07 PM
To: Kimberly Phinney <hello@jilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Can't wait to see you either!! So excited!!!

On Aug 17, 2023, at 9:43 AM, Kimberly Phinney <hello@jilaccatersme.com> wrote:

[Quoted text hidden]

# M Gmail

Bre Kidman <bre.kidman@gmail.com>

## Carnival!
2 messages

**Kimberly Phinney <hello@lilaccatersme.com>**
To: "Bre.kidman@gmail.com" <bre.kidman@gmail.com>

Mon, Aug 21, 2023 at 9:09 AM

Hello

I found some great ideas with a few websites that I work with to really pull off the carnival feel for you!!!!

These items will come from a distance so I have to place the order sooner than later. Your final deposit is what covers mostly the Decor and staffing so let me know when you're able to make that final payment and I'll go have fun in order some carnival decor!!!

I can't wait!!!
Kim

Get Outlook for iOS

**Kimberly Phinney <hello@lilaccatersme.com>**
To: "Bre.kidman@gmail.com" <bre.kidman@gmail.com>, Andie Gobeil <theandsymbol@gmail.com>

Mon, Aug 21, 2023 at 1:59 PM

Hello

I found some great ideas with a few websites that I work with to really pull off the carnival feel for you!!!!

These items will come from a distance so I have to place the order sooner than later. Your final deposit is what covers mostly the Decor and staffing so let me know when you're able to make that final payment and I'll go have fun in order some carnival decor!!!

See attached pictures of catering uniforms??
Yes/no
[Quoted text hidden]

**2 attachments**

Gmail - Carnival!

**IMG_4276.jpeg**
165K

**IMG_4275.jpeg**
145K



EXHIBIT H

**Lilac Mixology & Catering**
12 Pleasant St
Apt 2, augusta, ME 04330 United States
hello@lilaccatersme.com | 207-213-7881

Invoice #62258

**Issue date**
Aug 20, 2023

# Wedding Day Deposit for Bar & Catering

All Contracts are completed and signed once Deposit is made.

We appreciate your business.

| Customer | Invoice Details | Payment |
|---|---|---|
| Andi Gobeil | PDF created September 13, 2023 | Due August 20, 2023 |
| theandsymbol@gmail.com | $5,150.00 | $5,150.00 |
| | Service date October 7, 2023 | |

| Items | Quantity | Price | Amount |
|---|---|---|---|
| Catering<br>*Final catering food payment* | 1 | $2,500.00 | $2,500.00 |
| Bar/Travel<br>*This will go towards the bar tab for the evening* | 1 | $2,650.00 | $2,650.00 |
| Subtotal | | | $5,150.00 |
| Included Tax ($381.48) | | | |

## Total Paid                                         $5,150.00

**Payments**
Aug 21, 2023 (Visa 1035)                                     $5,150.00



**View online**
To view your invoice go to https://squareup.com/u/5sq1kpkO
Or open the camera on your mobile device and place the QR code in the camera's view.

Page 1 of 1

10:36 ✈

EXHIBIT I

 

**‹    Kim Cloutier Phinney    🔍**

**Kim Cloutier Phinney**
Aug 30 · 🌐

As many saw this weekend was not only a great step for our company but also a personal achievement that helped show me after all the pain of the pandemic that I still have what it takes!   But.......

This weekend also showed me that physically I can no longer do the hands on of catering, I'm 52 years old and I don't want to spend my free time recovering from this weekend's events because I had to unload the truck 4 times!   When I started catering my dream was to be able to offer quality catering at a decent price and I've done that for 10 years but times have changed and I can no longer afford to keep catering. I can no longer compete with other catering services that can offer a full time employment at a higher rate than I'm making myself!

So with a heavy heart I'm announcing that Lilac will no longer offer catering services to large groups such as weddings.   I will continue to have my kitchen, my catering license but more for the storefront.

Amour Market will continue to grow and expand under the continuing leadership of Clark.   I will support him as he has supported me for the past 10 years.   Lilac will perform all remaining contracts for 2023 and the few for the 2024 season.

My dream for Lilac was to have a full team working together to make wedding dreams come true without overcharging anyone!  We did amazingly while we could! Amour Market will continue to provide pick up catering and goodies!

     

Home      Friends      Video      Marketplace      Notifications      Menu

# M Gmail

Bre Kidman <bre.kidman@gmail.com>

## Important Message from Lilac Catering
1 message

**Kimberly Phinney** <hello@lilaccatersme.com>                    Fri, Sep 1, 2023 at 3:23 PM

Dear Friends,

We wanted to touch base with you in advance of your upcoming special day in regards to a very important challenge we and so many others in the hospitality industry have been facing, that of staffing shortages.

Like so many businesses we have been impacted by the ongoing labor market conditions which have made it difficult and challenging to provide our desired service levels. We understand the importance that our role in your upcoming wedding plays and we are fully committed to providing you with our award-winning services.

We have taken multiple steps to increase our staffing pool, including expanding our existing contract with a prominent national temporary and day staffing firm with multiple offices across Maine. Even with these additional measures there continues to be a staffing shortage. To give you an example, a recent event had 10 additional contracted staff scheduled to participate, only 4 showed for the day of the event. The remainder were no call/no shows, despite being part of our agency staffing contract. We are proud to say that we as a company still were able to provide all planned and contracted services for the event. The shortages do not just impact us; rental agencies, venue staff, and even floral and bar services have delt with repeated shortages.

While we may be facing the local impact of this ongoing nationwide staffing challenge, we remain committed to providing you with outstanding service and being a part of making your dream day a reality. We truly appreciate your choice of Lilac for your catering services. We assure you that we are and will continue to maximize staff to the fullest extent possible to deliver an experience that your guest will always remember. Our team may be smaller, but we are still committed and mighty.

Our lines of communication continue to remain open as always and we encourage you to message and email any questions you may have.

Thank You for choosing Lilac to be a part of your wedding day. We look forward to serving you and your guests.

Best,

Kim and Clark Phinney

Gmail – Important Message from Lilac Catering

EX H 6 LT K

## M Gmail

**Lilac update**
15 messages

---

**Bre Kidman** <bre.kidman@gmail.com>

**Kimberly Phinney** <hello@lilaccatersme.com>                                                    Thu, Sep 7, 2023 at 10:33 AM
To: Andie Gobeil <theandsymbol@gmail.com>, "Bre.kidman@gmail.com'" <bre.kidman@gmail.com>

Dear Bre & Andie

I hope this letter finds you well.

I am writing to inform you that the cost of your wedding catering has increased since our initial quote.

As you may be aware, the cost of food and other items has been steadily increasing in recent years. This is due to a number of factors, including the rising cost of ingredients, labor, and transportation compounded by supply chain shortages and severe weather impacting growing regions.

In addition, the cost of weddings has also been increasing in recent years. This is due to a number of factors, including the rising cost of venues, flowers, and other wedding-related costs particularly event staffing. Staffing shortages have impacted multiple providers across the wedding and special events landscape including our own company.

We apologize for any inconvenience this may cause. We understand that this is a difficult time for everyone, and we want to do everything we can to make your wedding day special. We have absorbed much of these additional costs ourselves but we have reached a point where we are unable to do so going forward. We have tried to keep the increase as minimal as possible, but we do need to pass along some of the increased costs to our clients.

The new cost for your wedding catering is an additional $1500.00

We hope you understand our situation and will still be able to celebrate your special day with us.

Please understand, I have done everything I can do make your day special, but I have drained every possible avenue I can find

If you have any questions, please do not hesitate to contact us.

Thank you for your understanding.

Sincerely,
*Kim*

---

**Bre Kidman** <bre.kidman@gmail.com>                                                             Thu, Sep 7, 2023 at 11:49 AM
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Hi Kim

I understand that inflation and labor shortages have hit us all hard and that you are doing your best to keep things manageable. I also need to communicate that one of the factors that led us to choose your company was the understanding that your menu costs are typically $65/head and that all alcohol would be included—which was a misunderstanding, but which we have adjusted for.

I'm at work until 6 today, but we need some clarity around this. I would like an outline of what the total price includes and a definitive menu— including details about what will be included for alcohol. I'm happy to discuss if there are menu cuts we can make to reduce costs, but I also need for you to be clear about any anticipated additional costs beyond this additional $1500. We will need a few weeks to come up with additional funds beyond what we've paid, but I am willing to do so as long as we are able to get some transparency in writing around what we can expect.

Thanks,
Bre

On Sep 7, 2023, at 10:33 AM, Kimberly Phinney <hello@lilaccatersme.com> wrote:

9/15/23, 10:56 AM               Gmail - Lilac update

Kimberly Phinney <hello@lilaccatersme.com>
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thu, Sep 7, 2023 at 12:25 PM

[Quoted text hidden]

I promise to have details to you ASAP
I just want to finish a few things for this weekend's wedding

From: Bre Kidman <bre.kidman@gmail.com>
Sent: Thursday, September 7, 2023 11:49 AM
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>
Subject: Re: Lilac update

[Quoted text hidden]

Bre Kidman <bre.kidman@gmail.com>
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thu, Sep 7, 2023 at 1:22 PM

Thanks, Kim.

Please let me know when you will be able to get us the details on this. This is a pretty significant deviation from our contract, and I need to know as soon as possible if we're going to need to make other arrangements.

On Sep 7, 2023, at 12:25 PM, Kimberly Phinney <hello@lilaccatersme.com> wrote:

[Quoted text hidden]

Kimberly Phinney <hello@lilaccatersme.com>
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thu, Sep 7, 2023 at

Bre & Andi

*Please note I never added Gratuity and with this increase I do NOT expect a penny!!!*

| My Original Quote | | |
|---|---|---|
| | $10,300.00 | |
| Staffing ~ wait staff | $1,524.00 | |
| Executive staffing | $2,750.00 | Since contract signing |
| Food Cost | $4,956.00 | |
| Transportation / setup | $460.00 | (truck cost was at 225.00) |
| Oven / smoker / stovetop Fuel | $225.00 | |
| Misc Items, buffet set up/table needs/special requirements for State's approval | $375.00 | |
| | | |
| **New additional Costs ~this is the additional for each area** | | |
| PFG Foods / Native / Sysco / BJ / Sams Club / Hannaford / Walmart (15% increase) | $1,500.00 | I am going to eat some of this and only show what I ABSOLUTELY need~ meaning I will pick up the remai |
| Bonney Staffing ~ started at 18.00 per person , now at 24.00 | $975.00 | I am hunting in every store to find the items I need for the day / Not everything is avilable through suppliers |
| Transportation ~ only the gas has increased | $350.00 | Includes truck packers and washers ( will unload the night off to save a little there) |
| | $145.00 | 15ft Truck |
| Here is your new total ~ Lilac will eat the rest, along with tips | $1,470.00 | |

I understand this is a BIG hit for you especially this late, please know I have done everything I can!
This has really hit me hard because I know the trust you put into me and my company.

9/15/23, 10:56 AM

Gmail - Lilac update

Kim

---

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Thursday, September 7, 2023 1:22 PM

[Quoted text hidden]

[Quoted text hidden]

Thu, Sep 7, 2023 at 5:25 PM

**Bre Kidman** <bre.kidman@gmail.com>
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Kim,

I need to know exactly what will be included for the menu, alcohol, staffing, setup, etc before I can be confident moving forward. I also need to know if any further costs will be incurred after the event.

This is more than a big hit—it represents a material breach of the contract we agreed to, while also happening too late for us to find a reasonable alternative. At this point, I am willing to extend some good faith and am hoping we can find a path forward, but I do really need some clarity in writing on what we can expect so that we don't wind up with another unpleasant surprise.

Thanks,
Bre

On Sep 7, 2023, at 3:50 PM, Kimberly Phinney <hello@lilaccatersme.com> wrote:

[Quoted text hidden]

---

Thu, Sep 7, 2023 at 9:47 PM

**Bre Kidman** <bre.kidman@gmail.com>
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Hi Kim

I've been trying to stay solution-focused this evening. Here's what I've got:

We've found a vendor who is willing to do entrees for half the cost of what we've paid you. Would you be willing to refund our last payment and still provide bar (including open beer, wine, and signature cocktails with other spirits available for purchase), a charcuterie grazing board, and maybe 1-2 app selections? Ideally this would relieve some of your labor scramble and cost increases while allowing us to avoid a budget crisis.

Let me know your thoughts?

Thanks,
Bre

On Sep 7, 2023, at 1:22 PM, Bre Kidman <bre.kidman@gmail.com> wrote:

[Quoted text hidden]

---

Fri, Sep 8, 2023 at 1:08 PM

**Kimberly Phinney** <hello@lilaccatersme.com>
To: "Bre.kidman@gmail.com" <bre.kidman@gmail.com>

Good Afternoon,

My cost are up 15% across the board, from salt and pepper to any protein.
I unfortunately can not tell you exactly what is going up in cost for your order because I never know until it is delivered.  Food cost are not held by any supplier so I have to hunt and see what I can do to fit the budget.

This is going to be my last wedding season; I am down to my last 5 weddings and I do not want any ill will or troubles between me and your wonderful family.

9/15/23, 10:56 AM                                                    Gmail - Lilac update

So moving forward I will take on the cost myself, I will honor my price and take the hit so that we can make sure together this goes perfect for you. Nothing will be different or change, your menu selection will be what you selected!

I just want to have an amazing final month! 😊

Thank you
Kim

**From:** Kimberly Phinney <hello@lilaccatersme.com>
**Sent:** Thursday, September 7, 2023 9:49 PM
**To:** Clark Phinney <amour@lilaccatersme.com>
**Subject:** Fwd: Lilac update

Get Outlook for iOS

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Thursday, September 7, 2023 9:48 PM
[Quoted text hidden]
[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>                                                                          Fri, Sep 8, 2023 at 8:39 PM
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Hi Kim

I want to start by saying we don't have any ill will. We understand that it can be difficult to be at the end of the road. Unfortunately, our confidence has been shaken quite a bit by these last few interactions. We find ourselves in a position where we're going to spend the next few weeks worrying whether you will be able to deliver under the circumstances.

I know that's not your intention, just as it's not our intention to make things harder for you. I think at this point we would feel most comfortable going forward with the plan I proposed last night. Ideally this would mean you're not eating so many costs and we can be assured that we'll have multiple avenues to feed people if staffing or budget shortfalls turn out to be a problem.

Would you please let us know what that looks like on your end? I don't want to offend—just trying to be forthcoming about how we're viewing the situation right now.

On Sep 8, 2023, at 1:08 PM, Kimberly Phinney <hello@lilaccatersme.com> wrote:

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>                                                                          Mon, Sep 11, 2023 at 4:40 PM
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Kim,

Just wanted to add: If it's less feasible for you to split off and only do half, it's okay to say that too. Honestly we're just trying to make sure we're not at the tail end of things where you're stretched too thin but trying to do it anyway. Our budget is pretty rigid, but we're willing to troubleshoot other pieces if we can make it run more smoothly.

Let me know where you're at when you get a chance?

Thanks,
Bre

On Sep 8, 2023, at 8:40 PM, Bre Kidman <bre.kidman@gmail.com> wrote:

[Quoted text hidden]

9/15/23, 10:56 AM    Gmail - Lilac update

Kimberly Phinney <hello@lilaccatersme.com>
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Tue, Sep 12, 2023 at 6:14 PM

Bre,

This is not a significant deviation as at no time in our communication to you did we indicate we would be eliminating services for your event.

It is unfortunate that you have opted to proceed with another catering service provider for your event. As we gave you a bundled package with our bar services price being greatly reduced, they are not available for separation from the catering. As you have opted for another catering provider, we will not be providing bar services for your event. We have notified the town of Saco that we will not be the licensed bartender of record for your event and any permits required will not be issued in our name.

As per your contract all monies paid are non-refundable.

Regards,

Kimberly Phinney

Get Outlook for iOS

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Monday, September 11, 2023 4:40:07 PM
**To:** Kimberly Phinney <hello@lilaccatersme.com>
**Cc:** Andie Gobeil <theandsymbol@gmail.com>
[Quoted text hidden]

---

Bre Kidman <bre.kidman@gmail.com>
To: Kimberly Phinney <hello@lilaccatersme.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Tue, Sep 12, 2023 at 7:05 PM

Kim,

Price is always a material term in a contract.

Our contract says that our deposit is non-refundable, but does not say "all money paid." It says the deposit is non-refundable. Furthermore: our suggestion was to use the deposit on our event.

If you have, indeed, notified the town and decided to take our money and not perform the contract, that is a material breach. We asked for a partial refund after you threatened non-performance by changing a material term of the contract. If you do not want to be held liable for the full amount plus damages, I suggest you rethink your approach. I was trying to negotiate with you in hopes that we could make the event easier for you to manage, but this response is beyond the pale.
[Quoted text hidden]

---

Bre Kidman <bre.kidman@gmail.com>
To: Kimberly Phinney <hello@lilaccatersme.com>, amour@lilaccatersme.com
Cc: Andie Gobeil <theandsymbol@gmail.com>

Wed, Sep 13, 2023 at 9:04 AM

Kim and Clark,

We are both deeply disappointed that you've responded in such an hostile way to our attempts at communicating around a solution that works for all of us.

An important bit of contract law: non-refundable deposits will not hold up when the holder of the deposit is the one breaching the contract. Our contract states that we are entitled to change the menu up to 2 weeks before the event, so our decision to change the menu plan is not actually a breach at all—unlike your unilateral attempt to change price, subsequent threat not to perform, and additional attempts to interfere with event permitting.

You should know that I've spoken with the police, who agreed with my professional assessment that your plan to take our money and not provide services constitutes two counts of class B felony theft, and advised me that they will gladly pursue a case against you should you fail to refund our money or perform as agreed. The AG, Darcie McElwee, was JUST telling me how I should give her a call if the local cops aren't helpful, so I trust things will shake out one way or another.

You may wish to get your own lawyer to explain all this to you, but the important part is: if you intend to withhold service, we expect a full refund by the end of the week so that we can contract with alternate providers without incurring more damages we'd need to sue you for (in addition to the restitution and fines you would be responsible for in the felony criminal case). If you truly do not intend to withhold service, we expect a full food and beverage menu—including quantities of all items to be served and proof that you have all appropriate licensure for alcohol service—by the end of the week, so that we have time to review and make changes before the 2 week change window is up.

Thanks,
Bre Kidman, Esq.

On Sep 12, 2023, at 7:05 PM, Bre Kidman <bre.kidman@gmail.com> wrote:

Kim,
[Quoted text hidden]

---

Kimberly Phinney <hello@lilaccatersme.com>
To: "Bre.kidman@gmail.com" <bre.kidman@gmail.com>

Wed, Sep 13, 2023 at 2:54 PM

In the long set of emails she thought my per person cost covered bar too

**From:** Kimberly Phinney <hello@lilaccatersme.com>
**Sent:** Thursday, September 7, 2023 5:27 PM
**To:** Clark Phinney <amour@lilaccatersme.com>
**Subject:** Fwd: Lilac update

Get Outlook for iOS

**From:** Bre Kidman <bre.kidman@gmail.com>
**Sent:** Thursday, September 7, 2023 5:26 PM
[Quoted text hidden]
[Quoted text hidden]

Wed, Sep 13, 2023 at 4:50 PM

**Bre Kidman** <bre.kidman@gmail.com>
**To:** Terry Mbrenga <terry@lupinelegalmaine.com>

I think this was intended for you.

You may wish to tell your client that misgendering me will not help matters.

Begin forwarded message:

> **From:** Kimberly Phinney <hello@lilaccatersme.com>
> **Date:** September 13, 2023 at 2:54:24 PM EDT
> **To:** bre.kidman@gmail.com
> **Subject: Fw: Lilac update**

[Quoted text hidden]

9/15/23, 10:54 AM

Gmail - Lilac Catering Contract

Case 24-01006    Doc 1    Filed 07/11/24    Entered 07/11/24 15:52:17    Desc Main
Document    Page 55 of 82

EXHIBIT L

1/8

## M Gmail

Bre Kidman <bre.kidman@gmail.com>

## Lilac Catering Contract
4 messages

**Terry Mitrenga <terry@lupinelegalmaine.com>**
To: "bre.kidman@gmail.com" <bre.kidman@gmail.com>

Wed, Sep 13, 2023 at 10:48 AM

Hi Bre,

My name is Terry Mitrenga. I am an attorney in Augusta. I've helped the Phinney's with various legal questions over the last several years.

I received some of your communications with Kim. I'm reaching out with the hope of deescalating the situation and hopefully finding some area of agreement and resolution on how to proceed.

I'm not sure what your current position is based on the email communications Kim forwarded -- and what you are open to -- whether full services, some services or no services.

Also -- I'm not sure if you are willing to communicate with me directly or if you have your own legal counsel that you would like me to go through.

Either way -- please consider this initial communication as an olive branch -- rather than an act of aggression or an attempt by the Phinney's to up the ante.

I look forward to hearing from you -- as I truly believe we can find a mutually agreeable solution for everybody.

Sincerely,

Terry Mitrenga, Esq.

Lupine Legal, LLC.

227 Water St., Ste. 210

Augusta, ME 04330

(207)458-1747

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Wed, Sep 13, 2023 at 11:57 AM

Terry,

I am happy to talk with you until the end of the week, but intend to retain counsel if this continues beyond that.

My position is that Kim has now threatened to keep $11,500 of our money and provide no services. The police came over last night and confirmed that they would gladly pursue a class B felony theft case if Kim and Clark proceed on that threat.

Lilac breached our contract on several occasions before threatening to keep our money and provide no service. Up until this point, we have been amenable to modification. As the situation deteriorated, we attempted to find a resolution that allowed them to work with the non-refundable deposit on the event date and they responded by interfering with event permitting and telling us they would keep all our money and not provide service. At this point, I would like to get our money back before we incur further damages. The opportunity to give us a full refund now without suing them for making us re-plan our wedding less than a month out is, itself, a concession.

As I said in my last email to Kim, if they do not truly intend to withhold services, we need to see a menu with quantities of everything to be served by the end of the week, along with proof they have appropriate licensing and insurance to serve alcohol. This is to ensure we have time to make changes to the menu within the contract window for changes. That said, we are unlikely to approve a menu that doesn't result in the partial refund we've asked for, because (to state the obvious) it's pretty hard to have confidence after someone threatens to take your money and run.

Please let us know where things land. As I told Kim and Clark: we will need either a refund or a detailed menu with quantities by the end of the week to avoid further damages. If their actions result in our wedding not having services (or in quality so compromised that we are effectively deprived of services), the damages will be significantly more costly to them than a mere refund.

Thanks,
Bre Kidman, Esq.

On Sep 13, 2023, at 10:48 AM, Terry Mitrenga <terry@lupinelegalmaine.com> wrote:

[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>
To: Bre Kidman <bre.kidman@gmail.com>, "theandsymbol@gmail.com" <theandsymbol@gmail.com>

Wed, Sep 13, 2023 at 1:34 PM

Hi Bre,

Thank you for getting back to me so quickly.

I'm sorry to hear that you don't want to use the services of Lilac Catering at all. I don't think that I have all of the communications between you and Kim because none of the emails Kim sent me include threats that she was not going to provide any services at all – while also keeping all of your money.

The email communications I have indicate the following sequence of events:

1. Kim reached out asking for additional compensation in the amount of $1,500 due to inflationary costs to perform the contract.
2. You reached out offering to use Lilac solely for Bar Services and indicating you had found somebody else to provide the food services.
3. Kim then indicated that she would was willing to perform the contract Bar and food services under the original terms, i.e., without the additional $1,500.

I am uncertain about additional communications and the subsequent sequence of events.  The only thing that is clear is the rapid deterioration between the two of you.

Honestly -- I think this is too bad because I believe Kim and her family are great people. I have personally seen them go to extraordinary lengths for their clients.  On the flip side - I have a great deal of respect and admiration for you through your role as a public figure on important social issues as well as your historical personal and political aspirations and goals -- which are laudable.

Certainly I understand that this is a very important event for you -- and should only be filled with happiness and joy.

All that being said -- I think we need to go back to the basics -- which are the terms of the contract.  There are a few provisions relevant to this situation.

The first two relevant provisions are the liquidated damages clauses-- the 50% nonrefundable deposit clause as well as the 90 day cancellation clause.  These are standard provisions universally used by businesses in the special events industry.  They were adopted for the obvious reasons -- i.e., businesses were blocking off dates which prevented them from entering into other contracts only to find that clients were frequently cancelling at the last minute -- oftentimes because they found a better deal - and the businesses had no way of replacing lost opportunities that had already passed by due to the blocked dates.

You also mentioned the menu change provision in your email exchanges.  If I understand correctly -- you are claiming that not using the company for any food at all could be construed as a menu change.  Obviously -- not using the company for any food services at all would not constitute a change in the menu -- but instead would qualify as a cancellation on the catering contract.  In contrast -- a menu change would be the swapping of one food item with another -- based on the menu list that is in the contract.

As to criminal charges -- I'm not quite sure which type of criminal charges you think are applicable to this situation.  This is clearly a question of a contractual dispute -- which is a civil matter.

All that being said -- you have every right to proceed with your event without using Lilac.  But you also have contractual obligations to consider.

If you choose not to use the services of Lilac at all - while Kim is still offering to perform under the original terms of the contract - then it is you who will be breaching the contract.

Honestly -- I really feel for everybody in this situation.  I understand completely how stressful our current times are -- and I think you and Kim are probably operating under similar financial pressures.  So everybody should have compassion for each other.  I think Kim is doing the right thing by offering to perform under the original terms of the contract.  I can understand you being angry and upset.  But on the side of fairness and your own contractual duties -- it is right for you to proceed under the original terms of the contract too -- even if you were temporarily upset by the situation -- or if you found a cheaper source of services.

Finally, I am not sure which portion of the $11,500 might fall under the 50% nonrefundable deposit and whether some portion would fall under the 90 day cancellation clause.  If you truly decide that you do not want to use Lilac-- we can certainly attempt to negotiate how much the refund will be.  However, to say you don't want to use any services -- which is both a cancellation and a breach -- and request all of your money back -- is unreasonable and unrealistic.

Anyway -- as far as I understand things at this moment -- Kim is ready to proceed under the original terms of the contract.

Please take some time to pull back from the heat of the moment and consider why you chose Lilac.  Please also take a moment to have some compassion and understanding for Kim -- who has faced some extraordinary price changes over the last few months.  I certainly instructed Kim to do the same towards you --  she needed to understand what a shock it must have been for you to receive the $1,500 request.

9/15/23, 10:54 AM

Gmail - Lilac Catering Contract

Please take time to consider all that I've set forth above and respond when you've had time to think things over.

Thank you.

Sincerely,

Terry Mitrenga, Esq.

Lupine Legal, LLC.

227 Water St., Ste. 210

Augusta, ME 04330

(207)455-1747
[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <threandsymbol@gmail.com>

Wed, Sep 13, 2023 at 4:02 PM

Terry,

I did not ask for a full refund or attempt to cancel food service until AFTER Kim told me she had cancelled the permits and did not intend to provide service to our event. Clearly you don't have the full email chain. I've attached a relevant screenshot, but there are many more. The police reviewed them before giving me their opinion last night. I'd be glad to make them more broadly available, but have refrained from doing so thus far in hopes of resolving things peacefully.

My request to Kim was to get a refund of the final payment of $5,150, and for Lilac to provide bar, charcuterie, and 1-2 appetizers using the $6,350 non-refundable deposits. We offered to use another provider for entrées and hot food because Kim lamented staffing and equipment costs at length, so we tried to find a solution she could execute with fewer complications. This is after acquiescing to Kim's assertion that they didn't intend to include the cost of alcohol in our agreement (about which I have an explicit email to the contrary) and in hopes that we could relieve the strain on Lilac, since they'd insisted the needed more money to do the job.

Lilac has not dealt with us in good faith. Theft by deception and deceptive business practices are both criminal charges (class B felonies when involving amounts over $10,000), and would come into play if they do not perform the contract or issue a refund by the date on the contract. I will involve the attorney general's office if I need to, but am hoping Lilac will see the benefit of our offers to resolve here. At our last communication, Kim told me ALL of our money was nonrefundable, that she did not intend to perform, AND that she interfered with the permitting for our event. This does not inspire trust, and has created a situation where I am going to be spending my wedding day looking over my shoulder to see how our caterer is going to screw us over.

The non refundable deposit will not hold up to Lilac's threat to breach. Neither will the 90-day cancellation clause, given that your client tried to extort us and then interfered with event permits when we tried to find a workaround for her instead of forking over more money. Demanding more money to perform the original contract with no additional consideration IS a threat not to perform the original contract. Reducing our menu to a portion of the food originally intended does not constitute cancellation—otherwise Lilac would have already cancelled the contract by changing their tune about alcohol.

If Kim DOES intend to perform, I maintain that she needs to provide an explicit menu with quantities of all items to be served, with enough time for us to make changes before the 2 week window. We have consistently asked for this, and Kim has consistently avoided providing it. Kim should also be advised that the initial contract was based on 150 people, not the 135 who will be attending.

I will reiterate here: I am prepared to litigate if Lilac fails to perform up to standard, and it will be much more costly to your client than issuing a refund now. My billable hour clock on dealing with this started ticking last week. I understand that Kim has dealt with price changes, but it was ultimately her responsibility to communicate that timely and work with us. Instead, she has threatened to leave us without service less than a month before our wedding and caused me to spend several full days trying to resolve her poor planning and find alternatives. I planned my wedding in January in hopes that this would be a happy and easy event for my family, and Kim has taken that away from me. These are all costs that will be added to the bottom line if she continues down this path. If I wind up having to pay deposits with other providers while she leaves me in limbo due to her threat not to perform, those costs will also be factored in.

9/15/23, 10:54 AM

Gmail – Lilac Catering Contract

So, again: If Lilac wants to perform, they need to provide an itemized food and beverage menu with quantities and time for changes. We expect the food services we want from them will be reduced from the original menu plan, just as the alcohol they initially agreed to provide was reduced. If they choose not to perform, we expect a full refund, but are willing to subtract the cost of the tasting.

If they choose neither of these options, they will be spending SIGNIFICANTLY more money to resolve the situation.

I look forward to your response.

Bre

7:06



Upgrade to a smarter Gmail

OPEN



Unread



**Kimberly Phinney**

to me, Andie

42 minutes ago   Details

Brie,

This is not a significant deviation as at no time in our communication to you did we indicate we would be

eliminating services for your event.

It is unfortunate that you have opted to proceed with another catering service provider for your event .   As we gave you a bundled package with our bar services price being greatly reduced, they are not available for separation from the catering.    As you have opted for another catering provider, we will not be providing bar services for your event.    We have notified the town of Saco that we will not be the licensed bartender of record for your event and any permits required will not be issued in our name.

As per your contract all monies paid are non-

refundable.

Regards,

Kimberly Phinney

AA    🔒 mail.google.com

[Quoted text hidden]

9/15/23, 10:55 AM

M Gmail

Gmail - Lilac Contract

Bre Kidman <bre.kidman@gmail.com>

## Lilac Contract

24 messages

**Terry Mitrenga** <terry@lupinelegalmaine.com>
To: Bre Kidman <bre.kidman@gmail.com>, Andie Gobeil <theandsymbol@gmail.com>

Thu, Sep 14, 2023 at 7:05 AM

Bre,

I have collected documents from Kim in order to go over the issues in this case. The documents I've attached provide clarification on all of the issues you addressed in your email yesterday. The documents cause me to strongly suspect that the reason there are so many misunderstandings in this case is due to the fact that you weren't included in all of the communications between Kim and Andie – who appears to have engaged in all of the contract negotiations and formation on his own. Quite simply – the assertions you made in your email are not supported by the documentation I've attached – I can only surmise that Andie did not completely understand the terms and conditions of the services and contract formation and did not correctly pass on information to you. I will go over each of the documents individually.

1. First - I attached a copy of Kim's initial response to Andie's online query about Lilac's services. The first half of the document deals with information on the catering services, i.e., the food portion of the company's services. Kim describes several different options and tells Andie that the pricing is "$65 and up" per guest. She also tells Andie that there is a minimum $6500 floor in order for Lilac to enter into the catering contract. About halfway down the page Kim describes the Bar services that can be added to the catering event – She explains that there is $1,500 nonrefundable reservation fee for the services that covers permits and the costs of the bartenders. She then provides general descriptions of the different bar service options – stating that for a "cash bar" the $1500 downpayment would be the only payment required because the guests would each pay for of their own drinks. She also describes "blended services" whereby Andie could agree to pay up to a certain amount of the alcohol costs and then the guests would pay after that. Finally – she mentions the open bar option – where Andie would pay for all the alcohol costs. –––– (Please note that the bar services are a corollary to the catering services –– and Kim would not have entered into a catering contract or the bundle catering and bar service contract without the $6,500 floor she mentions in this document)

2. Subsequent to these initial communications Andie entered into two separate contracts with Lilac– one for catering and the other for Bar and Beverage services – which are attached. I also attached a document Kim sent Andie with a proposed menu. It contains an estimate for 150 guests at 100 per plate – based on the menu items listed on the page. I don't understand how Andie did not realize the bar services were not covered by the catering contract when he entered into two different contracts for the two separate services. Even if Andie did not understand the import of two separate contracts – surely you would have – being a lawyer, i.e., two separate contracts should have been a red flag to you that the services for the bar were not covered by the catering contract – even if you did not see the initial communications between Andie and Kim. The billing statements also show that the payments were being separately applied to the two separate contracts – another indicator that there were two separate contracts.

3. After Andie entered into the two contracts – you met with Kim for a tasting on or about August 20. Apparently – it was at this time that you learned the catering contract was separate from the bar services – rather than an all inclusive catering contract that included bar services (which is apparently what Andie believed?) –––– It seems you did not fully understand the situation until then because you were not included in all of the communications between Kim and Andie – which, as previously mentioned, included the initial communications with Kim describing the two separate services – and the formation of the two separate contracts.

4. I have also attached the email Kim sent you the day after the tasting – on the 21st – giving you the pricing options for the different types of bar services, which included the following – Open bar for the whole night for $7500–$8500, beer and wine for the whole night at $5500–$6800 and cocktail hour services

https://mail.google.com/mail/u/0/?ik=51d4b1bb2d&view=pt&search=all&permthid=thread-f:1777010803282678&simpl=msg-f:1777010803282678&simpl=msg-f:1777028435543008723&simpl=... 1/17

for $3200-$3801.

5. Finally I have attached receipts for the payments made by Andie – which include two separate payments for the catering services in the amounts of $5,150 and $2,500 – total of $7,650 and two separate payments in the amount of $1,200 and $2,650 toward the Bar costs.

The attached documents show the following:

1. Based on your menu choices Kim charged you a total of $7,650 for 135 guests —— which amounts to roughly $56/guest —— a number well below the $65 quote Andie relied on. Clearly Kim did not charge Andie more than the $65 pricing Andie believed was the set price – even though Kim actually told him "65 and up" in the initial communication.

2. Separately Andie paid the $1,200 non-refundable fee (which is also lower than the $1,500 quote Kim gave him in their initial correspondence) as well as a $2,650 payment to go towards the bar tab.

Your email yesterday contained the following proposal – that you would now like to make unilateral material changes to the contracts whereby you would pay a total of $6,350 for all of the costs of the Bar and for some appetizers to cover catering services. There are several problems with this proposal. To begin with – depending on your bar choices the $6,350 might not cover the costs. You will need to get more specific about what you want and expect. As you know – the price for an open bar is $7500-$8500 so if you want this option the $6,350 would not cover the costs. The $6,350 could possibly cover the costs of the beer and wine but may not be enough for that either – because the upper range for that option is $6,800. Neither of those two option would leave any leftover funds for catering services – including for appetizers. You could possibly use one of the other options Kim mentioned to Andie in the initial correspondence – and allow for your guests to use up the $2650 of bar costs – then have the guests pay for their own drinks after that amount is used up. Or you could choose to have the guests pay for all of their own drinks – in which case Kim could refund you the $2650.

Your proposal has separate issues on the catering side. In the first place – a determination of how much of the $6350 would go towards appetizers cannot be determined until you give Kim information on the type of bar services you want – which may or may not be covered by the $6350 as described above. Second – it appears that any bar service option will still be inadequate for the purposes of fulfilling the catering contract obligations because the catering service value to drop below the $6500 floor – which was a pre-requisite in order for Kim to enter into either a stand alone catering contract – or the bundle package for both the catering and bar service contracts – which she entered into with Andie.

The attached documentation clearly shows that Kim was not behaving in either a dishonest or fraudulent manner. I believe that Andie did not read Kim's initial communications carefully enough and/or did not understand it. Even so – Andie then entered into two separate contracts for catering and bar services – which should have alerted both him and you, that the Bar services were separate from the catering services. The documentation clearly illustrates that there is no case for fraud, dishonesty, extortion – or any of the other things you claim. The documents also clearly show that Kim charged you less than what she quoted in the initial communication with Andie – $56/guest for catering and only $1,200 deposit for bar service deposit.

Kim will have a breach of contract claim based on your current proposal. She will also have separate defenses and cause of action claims under both promissory estoppel and detrimental reliance – which are supported up by the attached documents.

Please review the contents of this email along with the attached documentation and get back to me at your earliest convenience.

Sincerely,

Terry Mitrenga, Esq.

Lupine Legal, LLC.

227 Water St., Ste. 210

Augusta, ME 04330

(207)458-1747

**7 attachments**

📎 **Andie Gobeil Wedding Day Catering Contract - Google Docs (002).pdf**
83K

📎 **Andi Gobeil EVENT BEVERAGE SERVICE AGREEMENT - Google Docs (002).pdf**
66K

📎 **kidman menu options.pdf**
662K

📎 **August 21 email to Bre Bar Service Pricing.pdf**
713K

📎 **Kidman downpayment.pdf**
49K

📎 **Kidman Aug 2023 payment.pdf**
57K

📎 **Andie Response to Query.pdf**
69K

Thu, Sep 14, 2023 at 11:46 AM

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Terry,

It is unfortunate that Kim seems to have omitted the written conversations (not to mention the recorded phone calls) we had in the course of negotiating the contract in her communications with you.

It is also unfortunate that this is her response to our request for an itemized menu as proof she intends to perform following her express statement to me that she does not intend to perform. We have already fully performed our end of the contract, but requested partial rescission based on her communication that she was unable—and then unwilling—to perform. At this point, rescission with damages is more than appropriate.

As I have consistently stated: this is not our preferred outcome. Kim can still provide us with an itemized menu (and proof that she has reinstated necessary permitting) if she does, in fact, intend to perform the contract. If she is unwilling or unable, we are willing to accept a refund without pursuing damages until tomorrow.

If Kim does not provide proof that she intends to perform in the form of an itemized menu with time for changes, we will have to retain counsel and place deposits with other providers (which we have not yet done) in the interest of mitigating damages. The providers we located do come at a premium given the late date and lack of options and my family has graciously stepped in to fill the gaps in available services at their own expense. We will also be retaining counsel if Kim does not show her intent to perform by tomorrow.

If Kim does choose to perform and her performance falls below the standard laid out in our written negotiations, we will be pursuing damages after the event. Given Kim's substantial history of failures to perform on contractual obligations, I expect a jury will find our case quite compelling.

Finally, both Andie and I use they/them pronouns. I find it interesting that Kim's attitude towards us shifted dramatically after we informed her of this at the tasting. I expect the MHRC will, too.

Please let me know how Kim intends to proceed. We will hold off on further action until the end of business tomorrow, at which point we will have no choice but to pursue other avenues.

Best,
Bre

On Sep 14, 2023, at 7:06 AM, Terry Mitrenga <terry@lupinelegalmaine.com> wrote:

[Quoted text hidden]
<Andie Gobeil Wedding Day Catering Contract - Google Docs (002).pdf>
<Andi Gobeil EVENT BEVERAGE SERVICE AGREEMENT - Google Docs (002).pdf>
<kidman menu options.pdf>
<August 21 email to Bre Bar Service Pricing.pdf>
<Kidman downpayment.pdf>
<Kidman Aug 2023 payment.pdf>
<Andie Response to Query.pdf>

**Terry Mitrenga** <terry@lupinelegalmaine.com>                                           Thu, Sep 14, 2023 at 3:29 PM
To: Bre Kidman <bre.kidman@gmail.com>

Hi Bre,

Your request has been forwarded to Kim – she is pulling together the response now.

Separately - You indicate in your email that there written and recorded conversations whereupon you seem to be implying that the parties agreed to certain changes in the contract? As you know – I forwarded several documents to you.  On the other hand, you have not sent a single document – or recording - to show that the terms of either contract were otherwise changed by mutual agreement of both parties.  Please provide this a.s.a.p. if this is the case.

I believe your request for partial recission was denied when Kim emailed you that she was ready willing and able to perform under the original terms of the contract.  She will additionally confirm this again in the express statement you requested.  You have thrown out several different terms now – including recission, change in services and change in menu.  Bre – please be cognizant of the $6,500 minimum in the initial communications with Andie.  Menu changes that fall below that amount may pose contractual problems and conflicts.

Sincerely,

Terry Mitrenga, Esq.

Lupine Legal, LLC.

227 Water St., Ste. 210

Augusta, ME 04330

(207) 458-1747

[Quoted text hidden]

**Bre Kidman <bre.kidman@gmail.com>**                                                       Thu, Sep 14, 2023 at 4:19 PM
To: Terry Mitrenga <terry@lupinelegalmaine.com>, Andie Danvers <theandsymbol@gmail.com>

Terry,

I sincerely hope that Kim is ready, willing, and able to perform to standard. We look forward to receiving a menu with quantities of all items to be served—including alcohol, and the relevant permits.

Immediately prior to executing the contract, I asked Kim if the cost of alcohol was included. She replied that it was. I've attached that email. As I'm sure you can appreciate, this also represents grounds for recission.

I will gladly have my attorney provide any other necessary documents should Kim fail to provide proof that she is willing and able to perform the contract, or issue a refund, by end of business tomorrow.

Best,
Bre
[Quoted text hidden]

📎 lilac-alcohol included.pdf
73K

**Terry Mitrenga** <terry@lupinelegalmaine.com>
To: Bre Kidman <bre.kidman@gmail.com>

Thu, Sep 14, 2023 at 5:02 PM

Hi Bre,

The email you provided includes the following statement from Kim:

"Yes **our bar contract** covers all alcohol so it is beer, spirits and wine as well as not alcoholics.  Plus we do a his and hers drink no extra charge."

As you can see – Kim specifically referenced the separate bar contract – not the catering contract.  She also seems to be responding to a query as to what types of alcohol are included under the **bar contract** – rather than responding to a question as to whether all alcoholic beverages are included under the catering contract.

The separate sentence stating there would be "his and hers" drinks without extra charge – clearly indicates that there would be charges for the other drinks – for both alcoholic and non alcoholic beverages.

Let's put on our lawyer hats.  The standard applied in this case – were it to go to court – would be the normal reasonable person standard.  The question would be – Would a normal reason person believe – under these circumstances – in which there were two contracts issued – and based on the communications where Kim laid out the bar options – which included several scenarios – all of which included the nonrefundable bar deposit – and several different pricing options for – open bar, cash bar, etc... and in which you made payments on two separate contracts – and in which the catering contract did not include any mention of bar services.......

Based on those facts - what would the normal reasonable person think? Are you really planning to go into court and argue that you believed you could pay $65/guest –for full meals that included unlimited alcohol.  Do you think a jury would find that reasonable?

Finally -- the email message you provided does not include the initial question you posed to Kim. I'm sure that would provide additional elucidation on the answer she provided. Could you please provide the initial email query that prompted Kim's response. Thanks.

Do you have any other written documents -- or recordings - that you intend to rely on?

Thanks

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>

Thu, Sep 14, 2023 at 5:21 PM

Hi Terry,

We explained to Kim that we intended to have charcuterie, appetizers, and pizza--a SIGNIFICANTLY lower priced endeavor from the menu including items like beef tenderloin originally presented to us. Yes, we reasonably believed that was what was intended based on quotes from other vendors--who are no longer available. If Kim can cater full dinners of top shelf meats for $65 a head, it would stand to follow that flour, sauce, and cheese represent enough of a reduction in cost that it was reasonable for me to rely on her explicit statement that alcohol was included.

Here's the email with the question. I was uncertain whether the total price included all alcohol based on our conversation that morning, so I asked. The context of the email, as you can see, is about what the intended total costs are. I thought I remembered Kim saying open bar was included in the total price. I didn't see it mentioned in the bar service agreement, so I asked her to clarify. She responded by saying alcohol was included. I assumed that meant it was covered in the overall catering price--as a reasonable person would.

As I said before: my attorney will provide further relevant documents if Kim fails to either provide proof of her intent to perform or a refund. I've lost enough working hours dealing with this as it is.

Bre

[Quoted text hidden]

📄 **lilac-is alcohol included.pdf**
79K

**Terry Mitrenga** <terry@lupinelegalmaine.com>
To: Bre Kidman <bre.kidman@gmail.com>

Thu, Sep 14, 2023 at 6:18 PM

Bre,

I simply don't understand how references to "top shelf meats" and "flour, sauce, and cheese," pertains to the separate provision of alcoholic beverages.

Your first question states the following: "Does $10,850 represent the total cost of the deposit amount?" This question does not specifically ask about what is included in under the catering contract, and does not mention alcohol at all – it only request info on what the total amount of the 50% deposit was going to be?

The second question is: "The bar service agreement doesn't say whether it includes alcohol..." Again – the question asks about what is included in the bar service agreement – it doesn't pose any questions asking why a separate bar services agreement is needed – which seems a logical question if you believed the alcohol was included under the catering costs – and/or how the bar services agreement relates to the catering contract?

The two separate questions in this document – which appear to be the only things you are relying on – offer extremely weak support for your position. The questions are not clearly defined and do not specifically ask if alcohol is included under the catering contract – Neither do the questions clearly indicate that you believe you are purchasing both food and alcohol under the catering contract. If you believed both food and alcohol were included under the catering contract – why didn't you ask what the purpose of the bar contract was. Also – alcohol is notoriously expensive – and costs are highly dependent on the type alcohol that is consumed – as you can see from the separate pricing structures for open bar versus wine and beer etc. Mixed drinks with whiskey or other hard liquors can really drive up the costs.

Quite frankly – I find your claims incredible. I hope you hung on to the other quotes that you said included unlimited alcohol and full meals for around $65/guest. You will certainly need them in court. Maybe that's why those business shut down – because their pricing didn't cover the cost of their services. Either way – we will be requesting the names of those places through the discovery process.

Finally – I don't see any clear and precise questions or statements indicating you believed both food and alcohol were included under the catering contract. The catering contract does not say a thing about alcohol – the separate bar contract does (the very name of the contract being "Bar and Beverages" – bars usually connoting alcoholic beverages) – while the catering contract only refers to food items. Neither did the menu proposal include any mention of alcoholic beverages. None of your beliefs make any sense. What did you think the separate bar contract was for then? How are you going to explain in court all the information Kim provided to Andie in the initial response – which clearly indicated there were separate costs associated with providing alcohol and setting up a bar? – corroborated by the August 21 email.

Let's just say you made a mistake – you really thought the catering contract included alcohol too. It is an expensive mistake. I have made expensive mistakes too. I didn't like it when I did so. I wished I could erase my mistakes. I couldn't. The costs of going to court will almost certainly cost you more than the mistake. That seems to be the pathway you are determined to take.

Right now – you have a fully catered event with bar services that includes $2,650 in drinks for your guests – and then they can pay for their own drinks after that amount is used up. You should consider moving forward under the contract based on the agreed upon terms of both contracts. I think that would turn out well for you. Kim has to suck up some losses to – the inflationary costs – unfortunately - something I don't think she could have avoided.

My advise - Have a nice wedding and reception – and then save save to make up for the splurge — which I hope you and Andie will have many many many years together to do. Anyway - that's what I would tell your attorney to tell you – if you had one. Good luck Bre.

9/15/23, 10:55 AM                                                    Gmail - Lilac Contract

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>                                Thu, Sep 14, 2023 at 6:39 PM
To: Terry Mitrenga <terry@lupinelegalmaine.com>

Terry,

Truly this has been the most absurd and condescending "olive branch" I've ever received. I hope you are kinder to other people in your life.

At best, there is mutual mistake in the formation of the contract. More likely: your client fraudulently misrepresented her services thinking she could make off with our deposit.

You can talk yourself in circles all you like, but good lawyers know better than to drink their client's kool aid. Mine will be in touch if Kim fails to refund us or provide the necessary information to demonstrate intent to perform.

I hope Kim's performance of the contract is immaculate. Otherwise, I can't imagine she'll be able to pay you once we're through. Maybe remind her to contact the town and take back whatever she said about no permits or insurance issuing under Lilac's name.

Good luck to you.
Bre
[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>                     Thu, Sep 14, 2023 at 6:58 PM
To: Bre Kidman <bre.kidman@gmail.com>, Andie Gobeil <theandsymbol@gmail.com>

Bre,

Just to clarify – please find below the terms that I think you are demanding:

  1. You demand a refund for $5150; and
  2. You demand an open bar and an unspecified amount of appetizers at a cost of $6350; and
  3. These are your final terms - even if Kim provides you with the full menu list and itemized pricing you requested – as well as her assurances that she is able and ready to perform under the original terms of the contract and can make further assurances that all permits are active and ready to use.

Please confirm these are your final terms. If they are not – please qualify.

Thank you.

[Quoted text hidden]

https://mail.google.com/mail/u/0/?ik=51d4b1bb2d&view=pt&search=all&permthid=thread-f:1777010803828128267&simpl=msg-f:1777010803828128267&simpl=msg-f:1777028435543008723&simpl=...    9/17

9/15/23, 10:55 AM

Gmail - Lilac Contract

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thu, Sep 14, 2023 at 7:12 PM

Terry,

We are willing to proceed with Lilac as the sole catering and bar provider for our event as long as Kim provides an itemized menu including quantities of everything to be served (including alcohol) and can make further assurances that all permits are active and ready to use by end of business tomorrow so that we have time to make changes if necessary. As the original contract was for 150 people, quantities should be sufficient for that number, or else reflect additional bar credit/refund for the reduced number of attendees.

Please let me know if you require further clarification.

Best,
Bre

[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>
To: Bre Kidman <bre.kidman@gmail.com>, Andie Gobeil <theandsymbol@gmail.com>

Thu, Sep 14, 2023 at 7:27 PM

Bre —Alcohol is a commodity too with pricing associated with the different types – just like there is different pricing for different food items, i.e., ordering a shrimp dish for your catering has a different cost than ordering an appetizer – and the cost of whiskey is different than beer – so you can't just say alcohol without specifying.

In addition – again I am a little confused with all of the different emails so bear with me  – Are you now saying Kim keeps the full $11,000 + but that will include bar services – and are you talking open bar or cash bar or what?  Please be very specific – and tell me exactly what your demands are with all of the details.

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Thu, Sep 14, 2023 at 10:06 PM

Terry,

While I was drafting this message, Kim sent an email stating that she does not wish to perform. I am perplexed by her assertion that I cancelled, and by most of her message. I am sending this message to you because, frankly, I put a lot of time and thought into it.

—

I have intended our discussions to mean Kim would keep the full $11,500 if she is willing and able to perform and provide the details we have been requesting (and have not received) from the moment she demanded more money.

While Kim's actions to this point have not inspired confidence that she won't cut corners without adequate communication and perform poorly (or spitefully) at our wedding, my intention is to gain clarity on exactly what she intends to provide for the full contract price with enough time to troubleshoot. While I do still think the

9/15/23, 10:55 AM

Gmail - Lilac Contract

level of miscommunication and spiteful behavior to this point means that refunding our money is the safest way for us both to walk away intact, I am (and have been) willing to allow for the possibility that clear communication around expectations and plans can be another path to a positive resolution.

I want for Kim to have a clear roadmap to what I think acceptable performance looks like, and I want to have clarity around what Kim thinks acceptable performance looks like. In asking for more detailed menus, my intention has been to ensure there are no further misunderstandings about what is intended by each of us.

I expect clear communication about how many units of each item on the menu she intends to provide, with pricing.

I expect clarity around how she intends to assure our event is properly staffed.

I expect clarity on what will be provided for service (are plastic cups for drinks included? We discussed some small number of biodegradable plates/utensils? Napkins? Will they be providing the tables they need for service? Vessels for serving?)

I expect the difference between 150 guests and 140 guests will either be refunded or reappropriated to bar tab. I expect there to be enough food for 140 people.

Kim indicated half of our last payment would cover alcohol for bar services. I want to know what she interprets that to mean and what she intends to provide for open bar. Our (recorded) conversation left me with the impression that it would include beer, wine, and our signature cocktails at her purchase cost (due to the misunderstanding about alcohol being included) but am unclear on:
-What is her intended price per unit for the open bar amount?
-How many units does she intend to provide at the amount?
-What types of beer and wine will be available?
-How does she intend to deliver the signature cocktails? Andie and I had expressed that we wanted our signature cocktails to be a tequila sunrise and a "bourbon sunset" (Jack honey, rosewater or rose bitters, and apple cider with a cherry). Do they intend to do that punch bowl style or as individual cocktails? How many units/what price per unit?
-What is the intended price per unit if/when the tab runs out?
-What spirits will be available for purchase? At what price?
-What nonalcoholic beverages will be available, and will they count towards the bar tab? How many? Price per unit?

Is there anything else I need to provide to make this a clearer agreement? Please let me know.

Obviously this may no longer be relevant, since Kim seems to have decided she does not want to perform. I will still give you both until end of business tomorrow to figure things out.

Thanks,
Bre

On Sep 14, 2023, at 7:27 PM, Terry Mitrenga <terry@lupinelegalmaine.com> wrote:

Thu, Sep 14, 2023 at 10:28 PM

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Terry,

Kim should be advised that our communication on 9/8 is clearly not a cancellation. It is transparently an offer to modify based on her expression of the hardship she would have to endure to perform, made out of concern for the costs she said she'd have to absorb. It was followed by an email asking her to communicate with us about whether that would be helpful or if we could find a better menu solution that caused her less strain. Simply put: we didn't want her to stretch herself too thin trying to do our wedding if it wasn't going to work out well. We wanted to work with her on a solution that made the wedding less stressful for her and high quality for us. We wanted clear expectations on both sides.

I am uneasy telling her this myself given the nature of our communications these past few days but: if she does intend to cancel, she will need to refund our money or face criminal theft charges.

I remain hopeful that we can find a better resolution by the end of business tomorrow.

Thanks,
Bre

On Sep 14, 2023, at 10:06 PM, Bre Kidman <bre.kidman@gmail.com> wrote:

[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>                                    Fri, Sep 15, 2023 at 6:14 AM
To: Bre Kidman <bre.kidman@gmail.com>

Hi Bre,

I will forward your emails to Kim and see what she has to say. I will get back to you as soon as possible.

[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>                                    Fri, Sep 15, 2023 at 7:38 AM
To: Bre Kidman <bre.kidman@gmail.com>, Andie Gobeil <theandsymbol@gmail.com>
Cc: Kimberly Phinney <hello@lilacatersme.com>

Hi Bre,

I have touched base with Kim. This situation has had a profound effect on her mental and physical health. She expressed that she does not think she can perform under this contract based on all that has occurred over the last couple of days. She indicated she would rather return the money in order to avoid any further harm

to herself.

Some expenditures have been made in reliance on the contract being performed – such as for the permits, etc.   So at the very least those expenditures will have to be taken into account and deducted.  I will have to get the exact amounts from Kim.

Kim has another wedding this weekend and needs to focus on that for the time being  – so her availability is going to be limited over the next three days.

Kim indicated she will touch base and provide additional details regarding negotiating the refund.  It will probably involve a series of payments rather than one lump sum.  On that issue – I have assumed you were speaking on Andie's behalf because the two of you are a couple.  But at this point in time I am going to need to communicate directly with Andie.  He is the party who needs to agree to the terms and conditions – rather than you – because he is actually the one who contracted with Lilac.

To Andie - I will be in touch as I talk with Kim and we can shore up the details and determine the best manner to proceed over the upcoming days.

Take care and best of luck to the two of you moving forward.

[Quoted text hidden]

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>                                                                          Fri, Sep 15, 2023 at 7:55 AM
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>, Kimberly Phinney <hello@lilaccatersme.com>

Thanks, Terry.

Andie works night shift and is on their way to bed for the day, but they'll reply to this chain momentarily. I'm about to go into work. We need to place at least one of our deposits today or risk losing a replacement that took a lot of time and effort to find. At an absolute minimum, we need to get $2600 back today to avoid further damages on our end.

On Sep 15, 2023, at 7:38 AM, Terry Mitrenga <terry@lupinelegalmaine.com> wrote:

[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>                                                             Fri, Sep 15, 2023 at 8:13 AM
To: Andie Gobeil <theandsymbol@gmail.com>

Cc: Bre Kidman <bre.kidman@gmail.com>

Sure thing Andie. From here on out I will assume anything Bre represents to me is automatically approved by you.

However it is you who will have to actually sign off on any final settlement agreement.

Sincerely,

Terry Mitrenga, Esq.

Lupine Legal, LLC.

227 Water St., Ste. 210

Augusta, ME 04330

(207)458-1747

**From:** Andie Gobeil <theandsymbol@gmail.com>
**Sent:** Friday, September 15, 2023 8:07 AM
**To:** Terry Mitrenga <terry@lupinelegalmaine.com>
**Subject:** Re: Lilac Contract

Since Bre is a lawyer, I would prefer for them to negotiate on my behalf, and authorize them to do so.

[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>                                                   Fri, Sep 15, 2023 at 8:17 AM
To: Bre Kidman <bre.kidman@gmail.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Hi Bre,

A refund payment before a settlement agreement is in place is premature.

Hopefully, we will be able to complete a settlement agreement sometime next week – which will include the date of the first payment.

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Gobeil <theandsymbol@gmail.com>

Fri, Sep 15, 2023 at 8:29 AM

Hi Terry

Please know that the settlement will need to account for our damages in that case.

Thanks.
Bre
[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>
To: Bre Kidman <bre.kidman@gmail.com>

Fri, Sep 15, 2023 at 9:14 AM

Bre,

If you actually acquire damages we will deal with that when we get to it.

However, I really don't see how you can make a damages claim for not receiving an immediate refund payment on demand. Also – please be advised that if you go that route – I will have Kim look up every potential client that made queries for services on October 7 and have her counter your claim with the damages she suffered by forgoing other contracts on that date.

Bre, you seem intent on escalating things at every turn. If you do decide to increase the amount of the refund by trying to bring in damages claims please be advised that it is likely that a settlement agreement will fall apart – just like the negotiations this week.

If you keep pushing and pushing – it is likely a time will come when Kim will opt to take her chances in court – just as she decided to forgo performing on the contract due to your relentless opposition and never ending threats of criminal charges – which by the way have provided us with a strong intentional infliction of emotional distress claim against you – among other causes of action.

In closing – I do not have time to go round and round in circles with you today like I did over the past couple of days. I have other clients and other work that takes priority.   So – feel free to respond to this email if you like - and argue over your payment request, your purported damages claim, or anything else – but don't expect any responses today.

I will touch base with you next week – at which time I hope we can truly negotiate a settlement agreement– unlike the last few days where it has all been your way or the highway.

Please be advised that if a settlement agreement falls apart – we will be back to our initial claim that you were the first party to cancel the contract when you stated you would get food elsewhere.  That is not off the table until – and unless – we actually settle.

Have a good weekend and please take some time to think about how you wish to proceed moving forward.  I truly hope things work out better negotiating a settlement agreement than they did trying to negotiate the on the performance of the contract.

[Quoted text hidden]

**Bre Kidman <bre.kidman@gmail.com>**                                                    Fri, Sep 15, 2023 at 9:37 AM
To: Terry Mitrenga <terry@lupinelegalmaine.com>
Cc: Andie Danvers <theandsymbol@gmail.com>

Hi Terry,

I was clear from the outset that we would incur more damages than we are willing to absorb if your client failed to either refund or demonstrate intent to perform by today. We have been willing to cut our losses up to this point, but there is a limit. It is simply not credible for you—or her–to believe that there are no damages to us for their late cancellation of our contract and, now, interference with our ability to hire alternate providers. This is not an escalation; it is the position I have maintained throughout.

I provided several options for Kim to perform the agreement as written. She declined. I have provided several alternatives to compromise and make performance easier. Kim has declined. At this point, I can only assume she has unlawfully spent the money to be used on our event elsewhere and is delaying the process as a result.

I was willing to extend some grace to Kim by allowing more time for full refund so long as she refunded enough for us to hire new providers today, but if she is not willing to do that, she is clearly acting in a way intended to interfere with our ability to recoup our losses. Our losses—including my own IIED claim—will be much greater as a result. As I stated at the outset: if your client does not demonstrate intent to perform by providing the menu with quantities OR a full refund by end of business, I will be retaining counsel. Kim will ultimately pay that cost, too.

Think about what's truly in your client's best interest. Kim has until the end of business to work with us on a solution that does not create more damages for us. If she fails to do so, I will gladly connect you with my lawyer to continue the process, and we will be SIGNIFICANTLY less amenable to compromise.

Hope to hear from you.
Bre

[Quoted text hidden]

**Terry Mitrenga** <terry@lupinelegalmaine.com>
To: Bre Kidman <bre.kidman@gmail.com>

Fri, Sep 15, 2023 at 10:01 AM

Bre – I don't intend to respond to your email below as I indicated in my previous email – although I did scan it briefly.

I am writing to suggest that at this point – for the purposes of negotiating the settlement agreement - you and Andie retain counsel – rather than continuing on yourself on the behalf of the two of you.

Based on my quick scan of your email – I am not optimistic that we will be able to reach a settlement agreement. Since it looks like there is a very strong chance that this will go to court – it would be in your and Andie's best interest to get another attorney to represent both of you. Obviously - you will be a party in any court action even if you didn't sign the contract – as you are an interested party – and for the separate claims Kim would have against you personally. In addition –even though you might be able to represent yourself - Andie will certainly need independent counsel – as I believe there are ethical issues and other rules barring you from representing him under these conditions.

[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>

Fri, Sep 15, 2023 at 10:10 AM

Terry,

It's unfortunate that you have decided to proceed this way.

If you both truly insist on interfering with our ability to obtain replacement services, I will have my attorney contact you.

Best,
Bre
[Quoted text hidden]

**Bre Kidman** <bre.kidman@gmail.com>
To: Terry Mitrenga <terry@lupinelegalmaine.com>

Fri, Sep 15, 2023 at 10:13 AM

Apologies—I hit send by mistake without including the following:

As a person of my word, I do still intend to give you both until the end of business today to mitigate damages.
[Quoted text hidden]

9/15/23, 11:01 AM

M Gmail

Bre Kidman <bre.kidman@gmail.com>

## Lilac Contract finalization

1 message

**Kimberly Phinney** <hello@lilaccatersme.com>
To: "Bre.kidman@gmail.com" <bre.kidman@gmail.com>, Andie Gobeil <theandsymbol@gmail.com>
Cc: "terry@lupinelegalmaine.com" <terry@lupinelegalmaine.com>

Thu, Sep 14, 2023 at 9:57 PM

Bre & Andie

I have attached the menu you are requesting, note any additional items, such as appetizers, have a per guest cost, I have also attached the Carnival Menu that was presented to you at your tasting in August, as well as the original menu that the contract was agreed upon.

Per our original menu that was with the contract, still holds...

2 appetizers
1 salad options
2 proteins
2 starches

Per your email dated 9/7/23 you state that you and Andi have secured another vendor I am not sure about your numbers but for our team to drive to Ferry State Beach, the cost you are suggesting will be below my company per person cost as noted in my first email to Andi and with that is automatically denied. During our initial conversation I was hesitant to take on the wedding due to the distance and my lowest per person cost for 2023. I believe we had a couple of discussions referring to the distance, cost, and staffing, if possible, you may refer to your audio tapes for reference.

The bar service for Lilac was agreed upon to be contracted with the catering due to the lower per person plate cost, and Maine State Law requirements please refer to our second conversation, once the menu was in hand. Lilac cannot afford to send a full bar staff to your venue location. We also have the Maine State Liquor laws to abide by, there are a few I am concerned about, as one that is not the lawyer here, please let me list below

* Maine State Law states that any licensed liquor establishment CANNOT give away free alcohol for any reason, this would be why you have a credit on your bar side, I was moving funds so that some of the money was freed up in your catering to help you with your bar cost as shown below. I also discussed it in our last phone call, so, if possible, the audio reminder will help.

* Maine State Law requires a completely fenced in bar area (one entrance / one exit) I have not received confirmation that this requirement will be met by your diagram (see attached) There can be no evidence of outside alcohol, or the event is closed by law

Moving forward, Lilac will accept your cancelation of catering services as stated by you on 9/8/23, and Lilac will also accept the cancelation of the bar service due to the following reasons

9/15/23, 11:01 AM

Gmail - Lilac Contract finalization

*Cost per person is tremendously lower then agreed upon in our contract

*Catering/bar contracts were dependent on the execution of both contracts from Lilac

*The concerns for our team's safety, as you have stated the law enforcement has already been called against Lilac

*Lilac has tried to come to an agreement, even bringing in a mediator, but has only received hostile responses and threats

Due to these concerns and actions on the part of the couple, Bre Kidman & Andie Gobeil, Lilac will not be performing at the Ferry Beach Wedding on October7, 2023

Sincerely
Kimberly Phinney
Lilac Mixology & Catering

3 attachments

📄 **Menu Options - Google Docs.pdf**
656K

📄 **Carnival Menu from Tasting.pdf**
171K

📄 **1st email with client.pdf**
57K